1    and accordingly, a transfer pursuant to Section 1146(c) of

2    the bankruptcy code which shall not be taxed under any law

3    imposing a stamp tax or similar tax."

4             Do you have any comment on that?

5             MS. NEVINS:  I don't, Your Honor.  I've seen that

6    language.

7             Your Honor's probably inquiring about whether the

8    government would agree with that or determine that that's not

9    an enforceable provision.

10            THE COURT:  They say that I entered this order, and

11   they appear to be quoting from that order, which others

12   drafted and I signed.  But as we know from the *Scott* case,

13   which you were involved in --

14            MS. NEVINS:  Yes, Your Honor.

15            THE COURT:  -- the parties aren't bound by an order

16   as to which they did not -- a consent order to which they did

17   not participate.  And I just wanted to see whether or not the

18   IRS took a different view than this suggests and you're

19   saying that you weren't there and -- add some focus on that

20   paragraph.

21            MS. NEVINS:  Your Honor, I'm not sure what the

22   intent of that paragraph is; if it's to avoid the possibility

23   as in *Scott*, the *Scott Cable* case, the intention was to avoid

24   the imposition of capital gains tax generated by a sale under

25   a plan of reorganization.

43

1          That was found by Your Honor and by other courts to

2     be impermissible and a tax avoidance scheme or --

3          THE COURT:  No, but the fee -- the tax avoidance

4     scheme was the thrust of *Scott*.

5          MS. NEVINS:  Correct.  In this instance, I don't

6     know if the intention of the parties is to have a

7     determination that the assets being sold are not going to be

8     subject to successor liability claims by the service or

9     another taxing agency --

10         THE COURT:  The reason --

11         MS. NEVINS:  Or if it's a capital gains or income

12    tax issue.  I'm sorry.

13         THE COURT:  The reason I raise it is because I

14    don't want you all to leave court today and believe that that

15    issue is off the table in the future.

16         MR. ROBERT GROSSMAN:  Your Honor, if I may.  The

17    1146 treatment in a case like this is generally

18    (indiscernible) because it's a real -- there are underlying

19    real estate assets.   The issue is there are underlying real

20    estate assets and the transfer of those assets would be free

21    of transfer tax, but not the other issues Your Honor is

22    raising.

23         THE COURT:  I just want to -- I don't have -- I

24    have a concern that people say this has already been raised

25    and concluded by the order that is referred to in the March

44

1    6th, 2006 -- and that's the order of June 21.

2         MR. ROBERT GROSSMAN:  Right, Your Honor.  That's

3    what I was standing up -- just so that the record reflects

4    what order that comes from.  That comes from the June 21st,

5    2005 sale hearing, which I believe Ms. Nevins was in

6    attendance for. I'm not trying to box her in on anything, but

7    I just want to make sure that the record reflects the

8    February 2nd hearing is a different hearing than that order --

9         THE COURT:  Yes, but that order is now being

10   modified and then modified again perhaps and I just don't

11   want to have people say like at least tangentially it was

12   going on this morning.  This is off the table.  The Court

13   can't consider it.  It's already in bed and the record is

14   set.

15        MR. ROBERT GROSSMAN:  Your Honor, the beneficiary

16   of the order is SWJ and they're in court today to hear Your

17   Honor.

18        MS. NEVINS:  Your Honor, may I just inquire of the

19   Court of the import of the debtor's counsel's earlier

20   statement?

21            I believe the statement was that the taxes that

22   are referred to are intended to be conveyance taxes imposed

23   by a taxing authority based on a transfer of real property. I

24   just want to confirm my understanding that that's what was --

25        THE COURT:  Well, we could ask -- you could ask

45

1    that question through me and we can get an answer.

2              MR. ROBERT GROSSMAN:  Your Honor, yes.  Those are

3    stamped -- we would only be able to stamp taxes which would

4    be state and local. It wouldn't really affect the federal at

5    all.

6              THE COURT:  It says "Stamp or similar tax."

7              MR. ROBERT GROSSMAN:  Yes, Your Honor.  The case

8    law is pretty clear.

9              THE COURT:  All right.  Anybody have anything else?

10   No.

11             I'm going to take the position then that it's

12   premature for me to consider a motion to dismiss or convert,

13   or to set a hearing on any new motion to dismiss or convert.

14             That conclusion may change if I do not approve the

15   sale that is proposed this morning and I will now address the

16   question of whether or not to approve the sale that is

17   proposed this morning.

18             We'll take a 10-minute recess.

19        (Recess from 11:40 a.m. until 11:47 a.m.)

20             THE COURT:  All right. I'm going to start with the

21   consideration of the sale and I'll give you all day, but you

22   should know that if you're planning something for this

23   afternoon, I'm going to have to leave the bench at 20 of 1:00

24   and I'll be back at 2:00. So hopefully, we can finish what we

25   need to do in an hour and if we can't, we'll continue in the

1    afternoon.

2             All right.  Who is proposing this sale?

3             MR. ROBERT GROSSMAN: Your Honor, the debtor and the

4    committee and other creditors have joined together to propose

5    the sale.  The sale, we believe, has been explained to I

6    think everybody in the courtroom and Your Honor prior is

7    simply a new purchase price of $11.25 million.  The price to

8    be paid, $5.4 million in cash, as soon as Your Honor approves

9    the sale, which is in the Arent Fox trust account as we

10   speak.

11            The remaining amount of the sale, which math is

12   sometimes not my suit, 5.85, is paid by the tendering of a

13   note with nine percent interest payable by December, 2006.

14   That note --

15            THE COURT:  December 31st or December 1st?

16            MR. ROBERT GROSSMAN: I think it's December 15th.

17   December 15th, Your Honor.

18            THE COURT:  December 15.

19            MR. ROBERT GROSSMAN: 2006.

20            THE COURT:  Yes.

21            MR. ROBERT GROSSMAN: It accrues at nine percent

22   interest.  The security for the note is a basket of assets

23   that consists of all of the assets that the estate currently

24   has that are being transferred to SWJ.

25            So upon the entry of the sale order, there would be

1    a closing, the assets would be transferred pursuant to the

2    original asset purchase agreement which provides -- and I

3    will make this clear -- that it is subject to various claims

4    of the Mocco parties. It is also subject to asserted liens by

5    Titan.   And to the extent there are other liens, they're

6    taking it subject to those liens. So the asset is being

7    transferred subject to those liens.

8              THE COURT:  Is there any equity if all of those

9    liens are successfully prosecuted?  Is there any equity?

10             MR. ROBERT GROSSMAN: If the parties against whom

11   those liens -- an example, if Mr. Mocco is successful and

12   Titan's liens -- I don't really understand so I can't talk

13   about the magnitude of them -- but if those parties were

14   successful, it is highly doubtful that the assets of the

15   estate have any value.

16             THE COURT:  No equity.

17             MR. ROBERT GROSSMAN: No.  There would be no equity.

18   SWJ -- yes, there's no equity. Their business decision is

19   theirs.

20             In addition to that collateral, the estate is

21   getting additional collateral for the note in the form of an

22   assignment of proceeds from -- I term them bank guarantees.

23   People have used different terms, but there are, as explained

24   to the Court, approximately 12 -- there are 12 notes issued

25   by the Bank of Bangkok for a total value of $600 million.

1          And Cobra Ventura, which is an owner of SWJ, as was

2     disclosed in a deposition and which we've known, has agreed

3     that those assets for which they are the beneficiary will

4     stand for the estate so that even if the estate -- if the

5     assets that the estate transferred were for some reason to be

6     valueless because Mr. Mocco and/or Titan succeeded in their

7     face, we still would have access to the notes.

8          We make no representations -- I think Mr. Bainton

9     and the rest of us have been careful to say we are describing

10    the notes, there are a variety of views as to the

11    enforceability of them.  It's better to have it than not, but

12    that -- I think that suffices.

13         In addition, Cobra Ventura itself, who's -- as I

14    believe sole assets of the notes, but I'm not certain -- has

15    agreed to become a guarantor on this note, the note the

16    estate's getting.

17         One of the great -- one of the benefits of that is

18    that it gives us a clear path to the notes if we need to

19    proceed against them.

20         It also takes off the table, to some degree, an

21    argument that Mr. Schreiber has advanced in the court that if

22    the sale were not approved, then our ability to go after the

23    note is somehow limited because the notes were only

24    collateral. It's a peripheral issue. But that becomes the

25    basket of collateral.

1          I think what Mr. Bainton and the rest of the

2   parties really see is that we immediately have $5.4 million

3   of cash.  We have attempted to use that in a manner to

4   satisfy a lot of the issues that we see may come up in a

5   plan, because that's really where we're moving, both with the

6   internal revenue service, the unsecured's and the admins all

7   working together.

8          If there certainly are additional funds -- if there

9   are additional funds to the estate, that will certainly be to

10  the betterment, but I think the reason the proponents are

11  taking this position, the estate takes the position, the

12  position espoused in court the last time, that I think even

13  the Court recognized, essentially, the estate is left with

14  the exact same claims that it has today if it has to go

15  against its assets.  It has the additional benefit of being

16  able to go after the notes.

17         There is a subordination provision in the notes of

18  approximately $6 million, but I think most of us believe that

19  having $5 million today, rather than trying to have nothing

20  commence actions to get basically back to where we are today,

21  it's in the interest of the estate to have the $5 million.

22         I think that it is in the interest of the estate

23  because in part, that will provide funding for a liquidating

24  trustee.  The estate -- the committee, Mr. Bainton, Ms. Black

25  and others believe that there are one or several other

1    targets that the estate will be proceeding against to seek

2    additional revenues to bring into the estate. This would

3    provide the necessary funds to do that.

4            So basically, the position is that we are giving up

5    -- we are getting an additional series of collateral, we are

6    maintaining a lien on all our existing assets.

7            I'm not advocating this -- I just bring up that the

8    original contract price -- and the Court pointed out that it

9    was sold for 8.9, but the original contract price, had there

10   been no other bidders, was 5.5 million.

11           So when people determine what you would take for

12   the estate, one could -- and the Court -- it was made very

13   clear in the court that nobody believed anybody else would

14   bid, was approximately the cash we have now.

15           I don't use that and say that there wasn't an 8.95

16   opening sale price.  Arguments about the other bidder, all of

17   that stuff is past -- there are responses to it, but it's not

18   necessary.

19           But that's why we would urge the court -- I can

20   also inform the Court that I've been informed directly by the

21   parties who have put up -- excuse me. Have put up the money

22   for SWJ and I know we've all been in courts many, many years

23   and heard the ship is leaving.

24           I truly believe in this case, because of the basket

25   of assets we're selling and the difficulty of getting your

51

1    arms around them, unless we do conclude the sale today, then

2    as Your Honor well put, the proponents of the motion to

3    convert will have won by default.

4              THE COURT:  To confirm the sale today, what do you

5    require from the court?

6              MR. ROBERT GROSSMAN: Your Honor, I think we merely

7    require an entry of the form of order that had been

8    submitted, which modifies the June 21st order that provides

9    that the sale price in the form of cash and note is deemed in

10   the best interest of the estate and satisfies that sale order

11   and that's basically all we are asking for today.

12             THE COURT:  So you have electronically transmitted

13   to the clerk the modification of the June 21, '05 order.

14             MR. SCHREIBER:  Your Honor, I believe it is

15   attachment no. 1 to docket entry no. 904.  There is only one

16   other issue, Your Honor. I think --

17             THE COURT:  Hold on one second.

18        (Pause.)

19             THE COURT:  Gentlemen, I'm going to have to have

20   that order emailed to us in order for me to put my signature

21   on it, if I decide to do that.

22             MR. SCHREIBER: We can do that, Your Honor. And I

23   would add as of last night it was one verbiage change -- one

24   language change that we've wanted to add, which is when it

25   indicates that the $5 million in cash we paid to the debtor -

52

1    - it really was debtor's counsel that was supposed to be in

2    there and we apologize for that.  But that one little change.

3              THE COURT:  Now, does everybody in this room have

4    the text of the order you want me to see?

5              MR. SCHREIBER: Yes.

6              THE COURT:  I have -- who's wagging yes, then

7    wagging no.

8              MR. ROBERT GROSSMAN: Your Honor, if anybody

9    doesn't, we will give it to them right away. It was served on

10   everybody at one point.  Whether they are technically sitting

11   with it now I can't address.

12             THE COURT:  Well, I need to have them have the text

13   of --

14             MR. ROBERT GROSSMAN: I agree, Your Honor.

15             THE COURT:  -- what you want me to sign before I

16   sign it.

17             MR. ROBERT GROSSMAN: We can do that right now.

18             THE COURT:  And perhaps I ought to adjourn or

19   recess so you could do that.

20             MR. ROBERT GROSSMAN: I think they should be able to

21   look at it, read it, so when Your Honor hopefully agrees to

22   sign it --

23             THE COURT:  Somebody may need to raise a question

24   about it --

25             MR. SCHREIBER:  Your Honor, it's the same order

53

1    that was given to them weeks ago.  The same order without

2    changes.

3                THE COURT:  All right.  Let me see -- the nay

4    sayer's. Mr. Scarpone.

5                MR. SCARPONE:  I want to see the order. There's

6    been a lot of paper that was emailed around over the last

7    couple of weeks. I want to see the order before it's entered

8    and I don't have it with me right now.

9                THE COURT:  All right.  Ms. Nevins --

10               MS. NEVINS: Your Honor, I would also like the

11   opportunity to just review one more time --

12               THE COURT:  What I'm going to do at the end of

13   this, if I decide to electronically sign it, is I'm going to

14   ask all of you whether or not you have the authority to

15   consent and understand that your consent will bind your

16   clients and that this is not a work in progress.

17               It's the final product and that you expect me to

18   sign it, and you're representing to me that if I sign it, you

19   have read it and raise whatever objections you have to it, if

20   any, and those -- and you'll all be bound by whatever I do,

21   except your rights to appeal, but not appeal on the basis

22   that you haven't seen it.

23               MR. ROBERT GROSSMAN: Your Honor, I would --

24               MR. SCARPONE:  May I make one other request, and

25   that is that -- I know -- we're into that same pattern again

54

1    today.  Mr. Grossman is telling us that it has to close

2    today.  We have no evidence of that fact and by the way, we

3    were told that last June, too.

4              THE COURT:  All right.  But I'm going to --

5              MR. SCARPONE:  And we've -- but I want to object --

6              THE COURT:  We've had enough time --

7              MR. SCARPONE:  -- to representations of counsel

8    being substituted for evidence.  If there a need to close

9    today --

10             THE COURT:  Sir, let me say this to you.  I've

11   asked everybody here if they have anything to say about what

12   is being done.  Everybody -- I gave everybody an opportunity

13   to address whatever objections.

14             The only objection you could raise now, it seems to

15   me, is on the basis of the sale shouldn't go through. You

16   understand what it's going to be, or you don't know what the

17   sale order is.

18             I'm going to give you a chance to see what the

19   proposed sale order is and I'm going to get this thing over

20   with one way or the other, and then you could take this to

21   another court.  This case is four years old. I don't want it

22   to be any older.  Your rights, I think, are preserved.  You

23   could file whatever motions you want.

24             As you say, you're going to take a position on this

25   in any event.  You know that someone's going to be shooting

55

1    at your client.

2              MR. SCARPONE:  That's correct, Judge.  But I do

3    want to see the order, because we had some problems in the

4    past --

5              THE COURT:  You're going to see it.

6              MR. SCHREIBER: Your Honor, I've given them --

7              MR. SCARPONE:  I wanted time to read it, too.

8              THE COURT:  I'm going to give you a chance --

9    That's a good point.  Not only are you going to see it,

10   you're going to be able read it.

11             MR. SCARPONE:  Well, thank you, Judge.

12             MR. SCHREIBER: Thank you, Judge.  For the record, I

13   have -- while Your Honor was engaged in colloquy with Mr.

14   Scarpone, I have given each of them a copy of the order so

15   the record is clear.  They each have the order.

16             THE COURT:  All right. Now, everybody has the

17   order?  Everybody's got it.

18             MR. BAINTON:  Your Honor, just because -- you know,

19   Mr. Grossman and I, while we're friends personally, we've not

20   always been friends in this courtroom.

21             What these fellows are telling you is the

22   unvarnished truth.  They made an application some time ago to

23   amend the amended sale order. And in support of that

24   application they gave everybody on the service list a form of

25   order.

56

1          Now, that's the form of order they're asking you to

2     sign. Folks have had it -- the verbiage for weeks.  We -- we

3     have asked for one small change, which we've told you about.

4          The order literally says that the money will be

5     paid to the debtors.  For reasons which need no explanation,

6     we don't want any cash going to Mr. Licata.  We want the

7     money to stay with the lawyers, the debtor's lawyers, so that

8     it can be disbursed according to the plan.  And trust me,

9     under the plan of reorganization, Mr. Licata's not getting a

10    dime.

11         So the only change that we're making is to make

12    abundantly clear that the money is never going to be in any

13    place other than Arent Fox or disbursed pursuant to an order

14    of this court.  It's not going to Mr. Licata.

15              THE COURT:  All right.

16              MR. BAINTON:  So this is a smoke screen.

17              THE COURT:  I don't care -- I'm not -- don't draw

18    me into the Licata target. I'm only dealing with what I've

19    got now. What happens later on, I'll deal with when it

20    happens later on.

21              MR. BAINTON:  My point is only everybody's had this

22    form of order for weeks.

23              THE COURT:  All right.

24              MR. BAINTON:  That's my only point.

25              THE COURT:  All right.  Okay.  So now I have to

Fiore Transcription Service, Inc.   203-929-9992

57

1  give you all a chance to read it without interruption.  How

2  much time do you need to need do that, having in mind that I

3  want to be -- I've got to keep an appointment so I ought to

4  be leaving here about 20 of.  Do you want to come back here

5  at about 2:15?

6        MR. BAINTON:  Well, we could do this, Your Honor.

7  My friend, Mr. McCarthy, has a copy of the order that was

8  filed.  Obviously, the date needs to be changed.  That's the

9  other change.  We need to change the date. But we have the

10 text.

11       If you would like to take a brief adjournment, we

12 could avail ourselves of the photocopy machine and give to

13 the people who have copies of this order -- it's

14 interlineated (sic). You can't sign it.  But you have the

15 text.

16       We can come back in however long they need to read

17 it, 15 minutes, and talk about its text and we'll email you

18 the corrected copy, because you don't want to sign an order

19 where we've changed the date.  But we can email you a copy.

20       THE COURT:  Well, it's going to an electronic

21 order.

22       MR. BAINTON:  Pardon me?

23       THE COURT:  It will be an electronic order.

24       MR. BAINTON:  Exactly.  But my only point is as I

25 stand here I can give all of these people the form of order

58

1      with the date changed in pen.  We can talk about what it says

2      and then assuming there even might be changes, we'll file

3      whatever we agree.

4                  THE COURT:  All right.

5                  MR. BAINTON:  So we don't need to take all that

6      time.

7                  THE COURT:  Okay.  This is going go to be --

8                  MR. BAINTON:  If you want to break for 15 minutes,

9      we'll go to the photocopy machine and give everybody a set.

10                 THE COURT:  This is going to be a sale on a 363(b)

11     and (f) with certain interests held; some interest being

12     subject to and the *Lionel* position remains the same and I've

13     ruled on that.

14                 And if you get what you want, that is those of you

15     who want it, the sale proceeds will fund a plan which is

16     going to come up quickly.

17                 ALL:  Yes, Your Honor.

18                 THE COURT:  All right.  Why don't we -- if I give

19     you all say till a quarter after, does that give you enough

20     time to read it?  If not, I'll give you more time.

21                 MR. SCHREIBER:  It does, Your Honor.

22                 THE COURT:  Is that enough time?  Gentlemen?  Those

23     who haven't seen it?

24                 MR. DAUGHERTY:  Thank you, Your Honor.

25                 THE COURT:   I don't hear anybody say it isn't.

59

1      All right.  I'll see you at quarter after.

2              MR. SCHREIBER: Thank you, Your Honor.

3          (Recess from 12:05 p.m. until 12:21 p.m.)

4              THE COURT:  All right.  We have everybody we need?

5      Mr. Grossman is not here.

6          (Pause.)

7              MR. ROBERT GROSSMAN: Sorry, Your Honor.

8              THE COURT:  All right.  All right, Mr. Grossman, go

9      ahead.

10             MR. BAINTON: Your Honor, we have distributed copies

11     -- sorry.  Never mind.

12             MR. ROBERT GROSSMAN: Your Honor, I was needing --

13     servicing other people. I believe everybody has now read the

14     order. I stand on my prior comments and we ask the Court to

15     enter the order.

16             THE COURT:  All right.  Does anybody need more time

17     to look at the order?

18         (No audible response.)

19             Okay.  How much more time do you need?

20         (Pause.)

21             Mr. Daugherty, could you finish this?

22         (Pause.)

23             All right. I want to make sure everybody knows what

24     I am being asked to sign.  I'll take a ten-minute recess --

25     it won't make much sense take a ten-minute recess, because I

60

1    have to recess again in 20 minutes.  So I might as well --

2    I'll see you all a little bit after 2:00.

3         MS. NEVINS: Your Honor, if I may. I'm sorry. I am

4    required to appear in New Haven at 3:00 and I'm going to have

5    to leave here at 2:00 to be there.

6         THE COURT:  Which court do you have to go to?

7         MS. NEVINS:  It's Judge Weil's court, Your Honor.

8         THE COURT:  I want to finish this today.  If the

9    Internal Revenue Service has a position --

10        MS. NEVINS: I very much want to as well.

11        THE COURT:  -- I'm going to have to hold you here.

12   So I think maybe you'd better advise the parties down there

13   that there is a risk that you're going to be here, unless

14   you're going to tell me that you've seen the order, you have

15   no objection to it.  If you're going to object to it, I want

16   to have your objection on the record.

17        MS. NEVINS:  Your Honor, I don't intend to object

18   to the order, but I do have additional comments that I'd like

19   to put on the record regarding the order, just so the record

20   is very clear.

21        I will call Judge Weil's --

22        THE COURT:  Well, could you do that now?  Put it on

23   the record?

24        MS. NEVINS:  Yes, Your Honor.

25        THE COURT:  If you could put it on the record now

61

1    and then say on the basis of what you've put on the record

2    you consent to the entry of the order as to its form and

3    content, then -- and then if you ask to be excused, I'll

4    excuse you, so long as we understand that you have said

5    everything that you have to say.

6              MS. NEVINS:  Thank you, Your Honor.

7              With respect to the order that's been circulated, I

8    have received a copy today of what is going to be ordered, or

9    what is going to be presented to Your Honor for consideration

10   and I have no objection to it.

11             I do understand there's a change with respect to a

12   date that is going to be made and I have no objection to that

13   change.

14             The comment that I wanted to place on the record is

15   that there have been discussions among the parties about the

16   terms of a plan of reorganization and a term sheet was

17   circulated to Your Honor's chambers last night and to all the

18   parties, and I've had subsequent discussions with counsel

19   relating to the terms of that term sheet.

20             There have been some oral modifications to the term

21   sheet agreed to and I am making no objection to the entry of

22   the sale order based on those oral representations of changes

23   and modifications to the term sheet and in particular to the

24   treatment of the IRS and some other matters.

25             Your Honor, finally, with respect to some of the

1    other topics and some of the issues raised by Mr. Daugherty

2    and the motion to convert, I have questions of Mr. Licata

3    relating to certain documents that have been circulated among

4    the parties that form some of the bases for Mr. Daugherty's

5    motion to convert.

6            I would like to inquire of Mr. Licata relating to

7    those and I would like to inquire of the court, if the court

8    could inquire if the debtor's counsel will accept service of

9    a subpoena under a Rule 2004 order, which I intend to apply

10   for, Your Honor, to have Mr. Licata appear in a deposition at

11   the U.S. Attorney's Office to answer questions about some of

12   those documents.

13           THE COURT:  All right.  Is Mr. Licata's attorney

14   here?

15           MR. ROBERT GROSSMAN: Your Honor, as the debtor's

16   counsel, as Mr. Licata as a debtor, we certainly would.

17           MS. NEVINS:  My understanding is he's a debtor and

18   a debtor-in-possession.

19           MR. ROBERT GROSSMAN: Yes. He's a debtor and a

20   debtor-in-possession.  We would accept service of the

21   subpoena for that purpose.

22           THE COURT:  All right.  Does that satisfy you?

23           MS. NEVINS:  Yes.  Thank you.

24           THE COURT:  All right.  Anything else you want to

25   add?

63

1          MS. NEVINS:  No, Your Honor, and I thank you for

2     inquiring and allowing me to make the other court appearance.

3          THE COURT:  You're quite welcome.

4          Anything else?  All right.  Then why don't I see

5     you people back here around a quarter after 2:00.  Court's

6     adjourned -- court's in recess.

7          (Recess at 12:26 p.m.)

8          (Remaining portion of proceedings transcribed under

9     separate cover.)

10         I, CHRISTINE FIORE, court-approved transcriber, certify

11    that the foregoing is a correct transcript from the official

12    electronic sound recording of the proceedings in the above-

13    entitled matter.

14

15    *Christine Fiore*

16    _____June 8, 2006

17         Christine Fiore

18

19

20

21

22

23

24

25

Fiore Transcription Service, Inc.   203-929-9992