Peter Strojnik, Arizona Bar No. 006464
**STROJNIK, P.C.**
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: Strojnik@aol.com
Attorneys *pro hac vice* for Plaintiff
Lead Attorney

Maoputasi Young, Utah Bar No. 11247
1801 N 1120 W
Provo, UT 84604
Telephone: 801-655-1421
Facsimile: 888-267-5887
E-mail: tyoung@altamirada.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |
|---|---|
| DARE INVESTMENTS, LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> ARENT FOX LLP f/k/a ARENT FOX KINTNER PLOTKIN & KAHN, PLLC a New York Limited Liability Partnership, <br><br> Defendant. | NO.  2:11-cv-00266 <br><br> Honorable Dale A. Kimball <br><br> **PLAINTIFF'S MEMORANDUM OF SUPPORTING AUTHORITIES IN RESPONSE TO (1) DEFENDANT'S MOTION TO DISMISS, (2) MOTION TO TRANSFER CASE AND (3) PLAINTIFF'S MOTION TO CONVERT TO MOTION FOR SUMMARY JUDGMENT** |

Dare Investments v. Arent Fox

## <u>TABLE OF CONTENTS</u>

<b>Section</b> <b>Page</b>

**TABLE OF CONTENTS**……………………………………………...  ii

**TABLE OF AUTHORITIES**……………………………………………  iv

**INTRODUCTION**……………………………………………………..  vii

**STATEMENT OF UNDISPUTED FACTS**……………………………  x

**STATEMENT OF THE ISSUES**……………………………………...  xix

**ARGUMENT AND SUPPORTING LAW**……………………………...  1

**1)  THE COMPLAINT STATES A CAUSE OF ACTION UNDER TWOMBLY**.........................................................................................  3

**2)  ANALYSIS OF THE ESCROW AGREEMENT UNDER NEW YORK LAW**……………………………………………………………...  5

    a.  Under New York Law, Arent Fox's Fiduciary Duty Is Founded Upon An Instrument in Writing – the Escrow Agreement……………………………………………...  6

    b.  New York Statutory and Regulatory Law Created Additional Duties On Arent Fox, New York Lawyers…………………  7

    c.  Arent Fox Could Not Contractually Limit Its Own Liability Under New York Law………………………………………  8

**3)  PLAINTIFF HAD THE RIGHT TO RELY ON ARENT FOX TO DISCLOSE MATERIAL INFORMATION**……………………………  10

**4)  STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFF'S CLAIMS...**  11

    a.  Plaintiff's Claims……………………………………….  12

    b.  Six Year Statute Of Limitations Applies to Claims "Founded

Dare Investments v. Arent Fox

Upon An Instrument In Writing"……………………………….     13

    i.  Causes Of Action That Would Not Exist But For The Contract Are Governed By Utah's 6 Year Statute of Limitations………………………………………………     13

    ii.  Breach of Promises Implied In Contract Are Governed by Utah's 6 Year Statute of Limitations….     14

    iii.  Arent Fox's Breach of Ethical Standards Is A Contractual Claim……………………………………     15

**5) STATUTORY AND EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS………………………………………………….**     16

    a.  The Statute Of Limitations Tolled On All Claims, Including Fraud Claims, Until The Discovery Of Arent Fox's Prior Knowledge……………………………………………….....     18

**6) UTAH FORUM IS THE ONLY FAIR, PROPER AND CONVENIENT FORUM……………………………………………………....**     19

    a.  Connecticut Bankruptcy Court Lacks Subject Matter Jurisdiction to Hear This Case………………………………     20

    b.  Utah District Court Is The Only Convenient Forum………...     21

**7) CONVERSION OF ARENT FOX'S MOTION TO DISMISS TO MOTION FOR SUMMARY JUDGMENT……………………………………....**     24

**CONCLUSION AND PRAYER FOR RELIEF………………………..**     24

# TABLE OF AUTHORITIES

**Cases**                                                       **Page**

511 W. 232nd Owners Corp., 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131,
773 N.E.2d 496 (2002)……………………………………………………… 14

Addeo v. Braver, 956 F.Supp. 443 (S.D.N.Y. 1997)……………………... 11

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)…………………… 3

Blue Chip Emerald v Allied Partners, 299 AD2d 278, 279 (2002)………. 8

Brigham Young Univ. v. Paulsen Constr. Co., 744 P.2d 1370 (Utah
1987)………………………………………………………………………... 13, 14

Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709 (10th
Cir.2005)…………………………………………………………………… 11

Butala v. Agashiwala, 916 F.Supp. 314 (S.D.N.Y.1996)………………… 11

Carter v. Stanton, 405 U.S. 669  (1972)………………………………….. 24

Cathco v. Valentiner Crane Brunjies Onyon Architects, 944 P.2d 365
(Utah 1997)………………………………………………………………… 12

Celotex Corp. v. Edwards, 514 U.S. 300 (1995)………………………….. 20

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516
(10th Cir. 1991)…………………………………………………………….... xxi, 21

Colnaghi, U.S.A. v. Jewelers Protection Servs., 81 NY2d 821 (1993)…… 9

Comunale v. Traders & General Ins. Co., 328 P.2d 198, 203, 50 Cal.2d
654 (Cal. 1958)……………………………………………………………... 14

Cook v. Atchison, Topeka & Santa Fe Ry. Co., 816 F.Supp. 667, 669 (D.
Kan. 1993)………………………………………………………………….. 22

Director Door Corp. v. Marchese & Sallah, P.C., 511 N.Y.S.2d 930, 931,

127 A.D.2d 735, 736 (N.Y.A.D. 2 Dept., 1987)…………………………… 7, 9

Doran v. Treiling (In re Treiling), 21 B.R. 940 (Bankr. E.D.N.Y.1982)…. 6

Dubbs v Stribling & Assoc., 96 NY2d 337 (2001)……………………….. 8

Glinka v. Federal Plastics Mfg., Ltd. (In re Housecraft Indus. USA, Inc.),
310 F.3d 64, 70 (2d Cir. 2002)………………………………………… 20

Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003)………………………… 20

In re Grand Cent. Bldg. LLC (Bankr.N.D.W.Va., 2011)………………… 20

KCJ Corp. v. Kinetic Concepts, Inc., 18 F.Supp. 2d 1212 (D. Kan. 1998). 21

Mangiafico v. Blumenthal, 471 F.3d 391 (2d Cir. 2006)…………………. x

McTernan v. City of York, Pa., 577 F.3d 521 (3d Cir. 2009)……………. x

Meinhard v Salmon, 249 NY 458 (1928)………………………………… 8

National Union Fire Ins. Co. Pittsburgh, Pa. v. Proskauer Rose Goetz &
Mendelsohn, 165 Misc.2d 539, 545, 634 N.Y.S.2d 609, 614 (Sup.Ct.
N.Y. County1994),……………………………………………………….. 7

Obremski v. Image Bank, Inc., 30 AD3d 1141 (2006)…………………… 9

O'Brien v. King, 174 Cal. 769, 164 P. 631 (1917)………………………... 14

Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984)…………………….... 20

Peluso v. Tauscher Cronacher Professional Engrs., 270 AD2d 325
(2000)……………………………………………… …………………….......... 9

Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008)………………….. 3

Russell Packard Dev., Inc. v. Carson, 2005 UT 14, ¶ 21, 108 P.3d 741,
746 (Utah 2005)………………………………………………………….. 18

Scheidt v. Klein, 956 F.2d 963 (10th Cir. 1992)………………………….. 21

Schietinger v. Tauscher Cronacher Professional Engrs, P.C., 40 AD3d
    954 (2007)……………………………………………………………...    9

Sevy v. Security Title Co. of S. Utah, 902 P.2d 629 (Utah 1995)………...    19

Sommer v. Federal Signal Corp., 79 NY2d 540  (1992)…………………..    9

Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145 (10th Cir. 1967)………...    21, 22

Valley Colour, Inc. v. Beuchert Builders, Inc., 944 P.2d 361 (Utah 1997).    14

Washington Capital Ventures, LLC v. Dynamicsoft, 373 F.Supp.2d 360
    (S.D.N.Y., 2005)………………………………………………………    10

Wieder v. Skala, 80 N.Y.2d 628, 593 N.Y.S.2d 752 (N.Y. 1992)………...    15, 16

World Wrestling Entertainment v. Jakks Pacific, 530 F.Supp.2d 486
    (S.D.N.Y., 2007)………………………………………………………    10

## Other Authorities

22 N.Y. Comp. Codes R. & Regs. 1200.0 (Rules of Professional
    Conduct) Rule 1.15(a)…………………………………………………    xii, 2, 7,
    9, 15

55 N.Y.Jur.2d, Escrows, §§ 15, 24, p. 603, 611…………………………...    7

28 U.S.C. § 1334…………………………………………………………..    20

28 U.S.C. § 1404…………………………………………………………..    21, 22

F.R.Civ.P. 12(d)…………………………………………………………...    24

NY Judiciary Law § 487, Misconduct by Attorney………………………    2, 8, 25

Utah Code Ann. § 78-12-26(3) (2002)…………………………………….    18

Utah Code Ann. § 78B-2-309(2)…………………………………………..    13

Dare Investments v. Arent Fox

## **INTRODUCTION**

Arent Fox, as Dare Investments' escrow agent, breached its duty to disclose known fraud, breached its duty to disclose its self-interest, and breached its duty to disclose another party's inability to complete the underlying transaction.

Between May of 2003 and October of 2006, Arent Fox represented a debtor in possession in a Connecticut Chapter 11 bankruptcy proceeding *In Re First Connecticut Consulting Group, Inc.*, 02-50852-AHWS ("FCCG Bankruptcy"). As of August 29, 2005, Arent Fox amassed $1,957,067.67 in Court approved administrative costs and fees, but there were insufficient funds in the bankruptcy estate to pay.

The only potential source for payment of Arent Fox's fees and costs was from the sale of the bankruptcy assets (the "Assets"). Thus, in 2005, Arent Fox arranged for a sale of the Assets to SWJ Holdings, LLC ("SWJ"). The sale fell through when it was discovered that SWJ had no money to close the transaction.

In an attempt to resurrect the deal, SWJ, through its alter ego Cobra Ventura ("Cobra"), offered $50 million in Bangkok Bank Guarantees ("BBG's") as security for the payment of the purchase price. Arent Fox marketed the BBG's to a Swiss bank, but the Swiss Bank would have nothing to do with them. Arent Fox then hired a Bangkok law firm to investigate the validity of the BBG's and discovered that they were fraudulent and worthless.

With insufficient money in the bankruptcy estate to pay its own approved administrative costs and fees, Arent Fox had to look for money elsewhere.

On February 12, 2006, Arent Fox learned that Dare Investments ("Dare") was willing to lend SWJ $5 million to purchase the Assets, provided that its loan was guaranteed by the BBG's. Knowing that Dare was acting on the false presumption that the BBG's were valid, Arent Fox was faced with a dilemma: Should it disclose the fraud to Dare and lose $5 million, or should it keep quiet, take Dare's $5 million and pay itself its administrative costs and fees?  In an internal e-mail dated February 12, 2006, Arent Fox disclosed its decision to receive the money into the FCCG Bankruptcy Estate and not disclose the fraud to Dare:

> Most BK judges will take the money, if offered, and not involve themselves in the question of possible criminal acts by the non debtor.

See Exhibit 1[1]. On February 14, 2006, Dare entered into a Master Loan Agreement which provided that Dare would take security in the (fraudulent) BBG's. Exhibit 2. Also on February 14, 2006, Arent Fox opened an escrow account and appointed itself Escrow Agent to receive and disburse Dare's $5 million. Exhibit 3 (02-14-06 Escrow Agreement). The following day, Dare wired $5 million into Arent Fox's escrow account.

---

[1] Exhibit 1 is an e-mail string from Bangkok attorneys to Arent Fox's Mr. Grossman; from Mr. Grossman to Arent Fox's ethics counsel Mr. Carter; and from Mr. Carter to Mr. Croches, the subsequent FCCG Bankruptcy trustee.

Dare Investments v. Arent Fox

Arent Fox never advised Dare that the BBG's were fraudulent or that SWJ was financially unable to repay Dare's loan or that Arent Fox had a significant self-interest in Dare's $5 million funding of the sale.  Indeed, the entire deal was structured so that Arent Fox could pay itself its approved administrative fees and costs. As a result of Arent Fox's breaches of duties, Dare lost $5 million while Arent Fox paid itself $1,440,000.00.  Had Dare known that the BBG's were fraudulent, or that Arent Fox had an overwhelming self-interest, or that SWJ could not repay the loan, or that the entire deal was fraught with flaws and frauds, it would not have lent – and lost - $5 million.

Dare first learned of Arent Fox's intentional non-disclosures on February 11, 2011 when it obtained a copy of Arent Fox's internal e-mail dated February 12, 2006. See Exhibit 4. This e-mail disclosed Arent Fox's knowledge of the fraudulent BBG's and its intentional decision to not disclose the fraud until Dare wired $5 million into Arent Fox's escrow.

Dare Investments v. Arent Fox

<u>STATEMENT OF UNDISPUTED FACTS</u>

**<u>Arent Fox's Approved Administrative Claim in FCCG Bankruptcy</u>**

1)  On July 12, 2002, First Connecticut Consulting Group., Inc. filed for the protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut under cause number 02-50852-AHWS ("FCCG Bankruptcy"). FCCG Bankruptcy remains pending as of the date of this writing. The bankruptcy proceeding involves a complex series of interrelated transactions, debtors and claims. <u>See</u> Exhibit A to Arent Fox's Memorandum. (Judicial Notice[2].)

2)  Arent Fox was approved as special counsel for the Debtor on May 14, 2003. Doc 246. On August 5, 2003, Arent Fox filed its First Interim Application for compensation requesting $783,903.50 for fees and $39,726.71 for costs. Doc 371. On July 19, 2005, Arent Fox filed its Second Interim Application for compensation requesting additional $1,239,791.50 for fees and additional $98,016.74 for costs. Doc 742.  On August 29, 2005, the Bankruptcy Court approved Arent Fox's applications for payment of $1,957,067.67. Docs 814, 815.

---

[2] Plaintiff requests that the Court take judicial notice of Docket Entries in the FCCG Bankruptcy Proceeding. The court is entitled to take judicial notice of such adjudicative facts. <u>See</u> Fed. R. Evid. 201; <u>McTernan v. City of York, Pa.</u>, 577 F.3d 521, 526 (3d Cir. 2009) ("[A] court may take judicial notice of a prior judicial opinion."); <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice")

3) FCCG Bankruptcy Interim Monthly Reports indicate that the bankruptcy estate did not have sufficient funds to pay Arent Fox its approved administrative fees and costs. <u>See</u>, e.g., Doc 968 (Monthly Operating Report for August, 2005 showing a bank balance of $650,000.00). Therefore, for Arent Fox to be paid, it had to arrange for a sale of some or all of the Assets. (Judicial Notice)

## Arent Fox's Attempt to Get Its Administrative Claim Paid Through Sale of Assets

4) On March 11, 2005, Arent Fox filed a motion to sell the Assets to SWJ Holdings, LLC ("SWJ").  Doc 595.

5) On June 21, 2005, Arent Fox auctioned the Assets to SWJ for $8.95 million. On the same day, the Court signed an Order Authorizing and Approving the sale. Doc 716. Pursuant to the sale documents, SWJ was required to close the transaction by June 27, 2005. <u>Id.</u> SWJ paid the initial deposit of $400,000.00, but was unable to close the transaction because it had no money. (Judicial Notice)

## Arent Fox's Attempt to Get Its Administrative Claim Paid through BBG's

6) On October 12, 2005, the Court approved a modification of the sale to SWJ by increasing the sale price and accepting $50 million in Bangkok Bank Guarantees ("BBG's") as additional security. Doc 844.

7) The BBG's were deposited with Arent Fox; however, Arent Fox was not permitted to market the BBG's absent a court order. <u>Id.</u>

8) Despite the Court Order prohibiting Arent Fox from marketing the BBG's, Arent Fox marketed the BBG's to Societé Banque Privee, S.A. of Geneva, Switzerland, but the Swiss bank would have nothing to do with BBG's[3]. (Judicial Notice)

## **Arent Fox Conducts Its Investigation Into the BBG's and Discovers That They Are Fraudulent and Worthless**

9) Since there was insufficient money in the bankruptcy estate to pay Arent Fox's approved administrative fees and costs, Arent Fox's ability to be paid out of the BBG's was an important element of Arent Fox's representation of the Debtor. Therefore, Arent Fox commenced its own investigation into the BBG's. Arent Fox hired a Bangkok law firm of Chandler & Thong-Ek to investigate the validity of the BBG's. See, e.g., Exhibit 1.

10)   On February 9, 2006, Chandler & Thong-Ek advised Arent Fox that the BBG's were fraudulent. Doc 1146-2. On February 10, 2006, Mr. Grossman, Arent Fox's lead bankruptcy counsel, received a written confirmation of the BBG fraud. See correspondence from Thai counsel, Exhibit 1.

11)   As of February of 2006, there was only $650,000.00 in the Debtor's operating account. See February, 2006 Operating Report, Doc 974. Since the BBG's were fraudulent and worthless, Arent Fox began searching for other

---

[3] Subsequently, the Bankruptcy Judge determined that Arent Fox violated the Court order by transferring the BBG's to Switzerland and stated "whether or not sanctions will be imposed because of that is something I'll take up on a later date." (Judicial Notice)

sources of money. Ultimately, Arent Fox, SWJ and Cobra[4] found Dare Investments. See Affidavit of Richard McCloskey, Exhibit 5[5].

## Arent Fox's Attempt to Get Its Fees Paid Through Dare's $5 Million Loan to SWJ

12)    In February of 2006, Cobra's attorney Mr. Gordon Duval[6] and Dare's managing member Richard McCloskey commenced discussions regarding the $5 million loan to SWJ. Id.

13)    The $5 million loan would be used so that SWJ could purchase the Assets. The loan would be secured, in part, with the BBG's. Id.

14)    On February 12, 2006, Mr. Duval e-mailed a letter to Mr. Grossman in which he disclosed the terms under which Dare was willing to fund the $5 million loan to SWJ[7]. See Exhibit 2 to Complaint; Exhibit F to Arent Fox's Memorandum.

15)    On February 14, 2006, SWJ, Cobra and Dare entered into a Master Loan Agreement. Exhibit 2.  Pursuant to the terms of the Master Loan Agreement, Cobra granted to Dare a senior security position in the (fraudulent) BBG's. Id.

---

[4] As indicated in the Introduction, Cobra was SWJ's alter ego.  The BBG's were "issued" in Cobra's name.

[5] Mr. Duval represented Cobra; he did not represent Dare Investments or any of its principals. Id.

[6] Cobra was the SWJ associated entity in whose name the (fraudulent) BBG's were issued.

[7] In its Brief, Arent Fox refers to Dare as an "investor".  Dare was never an "investor"; Dare was a lender. See Exhibit 5 (Affidavit of Richard McCloskey).

16)    Arent Fox's Mr. Grossman was in close communications with Mr. Duval
and was closely involved with the Cobra – SWJ – Dare loan transaction. <u>See</u>
Doc 1146-2.

### Arent Fox Decides Not To Disclose The Fraudulent Nature of BBG's

17)    On February 12, 2006 – two days prior to the execution of the Master Loan
Agreement and the Escrow Agreement - Mr. Grossman faced a serious
dilemma:  Should he disclose the BBG fraud to Dare and lose the $5 million
(which would mean that it would not get paid its approved administrative fees
and costs), or should he keep quiet and take the money? The dilemma was
resolved in favor of taking the money. In the 02-12-06 e-mail, Mr. Grossman
disclosed his plan of concealment:

> I received a call from the attorney in Thailand that wrote this letter.  He
> explained in greater detail what he believes we are dealing with.
> Apparently this is not the first time BGs of this type have been used in
> an attempted fraud. The bank has in the past referred several similar
> situations to the Thai authorities for review.  He did not say these notes
> have been referred. He also told me that the bank said that the
> registration numbers are not in the form that they would use for these
> types of guarantees.  He believes we are dealing with worthless and
> fraudulent paper.
>
> **We should discuss how to bring this to the attention of the court
> and the authorities.**  Brody[8] believes that all of the parties affected by
> this may have claims against several parties including Proskauer[9].  They
> argue that Dale[10] was either a knowing party to this fraud or was grossly

---

[8] Alan Brody, counsel for the Creditors' Committee.

[9] SWJ's law firm.

[10] Dale Schreiber, SWJ's attorney.

negligent. They have also raised the question of if the estate has the rights of SWJ does SWJ have claims against [its lawyers] for representing SWJ and Cobra. Schreiber still argues that the Notes are authentic and that he can explain the responses from the bank. Schreiber and Gordon Duval also insist that they will, prior to Wed[11] fund a compromise proposal. **Most BK judges will take the money, if offered and not involve themselves in the question of possible criminal acts by the non debtor.** That is all I know at this time. The committee is fully aware of this.  In fact they did their own analysis of whether to go to court or wait until Wed. (Footnotes, emphasis added)

<u>See</u> 02-12-06 e-mail from Grossman to Carter, Exhibit 1; Affidavit of Richard McCloskey, Exhibit 5.

18)    On February 14, 2006, Mr. Grossman prepared the Escrow Agreement. Exhibit 3. The following day, February 15, 2006, Dare wired $5 million to Arent Fox.  <u>Id.</u>

19)    The timing warrants reiteration: On Thursday, February 9, 2006, Arent Fox learned that the BBG's were fraudulent.  On Sunday, February 12, 2006, Mr. Duval advised Mr. Grossman that Dare would be able to fund the deal by Wednesday, February 15, 2006.  Also on Sunday, February 12, 2006, Arent Fox made a conscious and deliberate decision not to disclose the fraud because "**[m]ost BK judges will take the money, if offered and not involve themselves in the question of possible criminal acts by the non debtor**". (Emphasis supplied)   On Tuesday, February 14, 2006, Dare entered into the Master Loan Agreement providing for security in the (fraudulent) BBG's. On

---

[11] The date Dare's money was to be wired – and was wired -to Arent Fox.

the same day, Arent Fox executed the Escrow Agreement.  On the following day, Wednesday, February 15, 2006, Dare wired Arent Fox the $5 million.

20)    Closing occurred on March 13, 2006. (Judicial Notice)

### $1,440,000.00 Of Dare's Loan Is Passed Through To Arent Fox; Arent Fox Withdraws As Counsel For The Debtor

21)    Throughout the flurry of events in the February – March 2006 timeframe, Arent Fox never disclosed to Dare that the BBG's were fraudulent, that the entire deal was structured so that Arent Fox could pay itself its approved fees and costs, and that SWJ was financially unable to repay Dare's loan.  As a result, Dare lost $5 million while Arent Fox gained $1,440,000.00 in "reduced" fees.  See Doc 1146.

22)    Had Dare known that the BBG's were fraudulent, or that Arent Fox had an overwhelming self-interest, or that SWJ could not repay the loan, or that the entire deal was fraught with flaws and frauds, it would not have lent – and lost - $5,000,000.00. Affidavit of Richard McCloskey, Exhibit 5.

23) On October 18, 2006, Arent Fox filed a Motion to Withdraw as counsel for Debtors. Doc 1159.

24) On November 22, 2006, the Court granted Arent Fox's Motion to Withdraw Doc. 1189.

## Dare Did Not Conduct Independent Investigation Into Arent Fox's Fiduciary Obligations

25)    Dare, through its managing member Richard McCloskey, retained attorneys who conducted independent due diligence into SWJ's proposed purchase of the Assets from the bankruptcy estate. Dare did <u>not</u> conduct any investigation into Arent Fox's self-interest or the validity of the BBG's.  <u>Dare was aware of no facts that would lead a reasonable person to no longer trust Arent Fox. Therefore, Dare's reliance on Arent Fox's failures to disclose was justifiable.</u> <u>See</u> Affidavit of Richard McCloskey, Exhibit 5.

## Dare Did Not Have Notice of Its Causes of Action Until February 11, 2011

26)    Arent Fox kept its knowledge of the fraudulent nature of the BBG's "PRIVILEGED" and secret, as demonstrated by "PRIVILEGED" designation on February 12, 2006 e-mail to Mr. Chorches[12]. Exhibit 1.

27)    On May 11, 2009, Mr. McCloskey met with Mr. Mocco[13] in New Jesery. At this meeting, Mr. Mocco expressed his doubts into the legitimacy of the BBG's. Dare thereafter conducted due diligence to determine the precise timing of Arent Fox's knowledge of the fraudulent BBG's, the extent of Arent Fox's self-

---

[12] Mr. Chorches is the subsequent Bankruptcy Trustee.

[13] Mr. Mocco made claims of ownership to the FCCG Bankruptcy Assets. Mr. Mocco is represented by Mr. Scarpone from whom Dare obtained the 02-12-06 e-mail from Mr. Grossman to Mr. Carter, Exhibit 1.

interest, and Arent Fox's prior knowledge of SWJ's inability to repay the loan. Affidavit of Richard McCloskey, Exhibit 5.

28)    Dare did not receive actual information relating to Arent Fox's breaches of fiduciary duty sufficient to file a cause of action until February 11, 2011, when its counsel received a copy of Arent Fox's internal communications disclosing the BBG fraud.  This e-mail came from James Scarpone, Esq., a New Jersey attorney for Peter and Lorraine Mocco. See 02-11-11 Scarpone e-mail, Exhibit 4; Affidavit of Richard McCloskey, Exhibit 5.

29)    Dare first learned of Arent Fox's intentional non-disclosures on February 11, 2011 when it obtained a copy of Arent Fox's internal e-mail dated February 12, 2006. See 02-11-11 Scarpone e-mail, Exhibit 4. Dare could not have initiated legal action against Arent Fox for non-disclosure because "prior knowledge" is a necessary element of the tort of nondisclosure.  (Judicial Notice.)

Dare Investments v. Arent Fox

## <u>STATEMENT OF THE ISSUES</u>

1. Does Plaintiff's detailed Complaint consisting of 121 individually numbered factual allegations fail to state a claim under <u>Twombly</u>?

2. Is the contractual limitation of Arent Fox's liability contained in the Escrow Agreement enforceable under New York law?

3. Does Utah's 6 year statute of limitations for action "founded upon an instrument in writing" apply to contractual terms in the Escrow Agreement that are implied by law?

4. Does the equitable and statutory tolling of the Statute of Limitations extend the time for filing the action where Plaintiff discovered its causes of action on February 11, 2011?

5. Does the Connecticut Bankruptcy Court have jurisdiction over this controversy?

6. Is the Utah Forum the only convenient forum pursuant to <u>Chrysler Credit Corp. v. Country Chrysler, Inc.</u>, infra?

7. Should this Court convert Defendants Motion to Dismiss to one for Summary Judgment and grant judgment in favor of Dare Investments where the facts are undisputed and Dare is entitled to judgment as a matter of law?

## ARGUMENT AND SUPPORTING LAW

In February of 2006, Arent Fox acted simultaneously as (i) the attorney for the debtor in possession, (ii) the escrow agent receiving $5 million from Dare, and (iii) the approved administrative creditor in the amount of $1,957,067.67. Dare alleges that Arent Fox failed to discharge its duty of disclosure; had Arent Fox disclosed relevant material information, Dare would not have lent – and lost - $5,000,000.00.

In order to escape liability, Arent Fox's Motion to Dismiss argues that the Escrow Agreement contains various forms of limitations on liability. Arent Fox argues that as a result of these contractual limitations on liability, Dare's Complaint must be dismissed under New York law.

In connection with this argument, Arent Fox fails to disclose that under New York law such limitations of liability are unenforceable. It also fails to reveal that pursuant to New York law, the very existence of the written Escrow Agreement imposes upon it the fiduciary duties of an escrowee.

In its Motion to Dismiss, Arent Fox admits its prior knowledge and non-disclosure[14]. Arent Fox fails to mention that by entering the Escrow Agreement

---

[14] Arent Fox admits that as part of the overall scheme, Dare was to receive a "senior interest in the BBG's", see Arent Fox Statement of Facts at ¶39, and that on February 15, 2006, Dare wired $5 million to Arent Fox as the escrow agent. Id. at ¶40.  It admits that "at the February 27 (2006) hearing (in the FCCG Bankruptcy) there was extensive discussion with the Court regarding the questionable validity of the BBG's", id. at ¶¶46 – 48, and that "[t]he entire thing may be affected

Dare Investments v. Arent Fox

and accepting Dare's $5 million, it became Dare's fiduciary as a matter of New York common and statutory law[15]. Having admitted the essential elements of Plaintiff's cause of action, Arent Fox nonetheless paints itself as a "nationally known and highly respected law firm"[16] and paints Dare as a "claimant in search of a deep-pocketed defendant". Id. Arent Fox's characterizations are misplaced.

Arent Fox further argues that Dare's claims are barred by applicable statutes of limitations. However, there is no dispute that Utah's 6 year statute of limitations applies to all promises, covenants duties and obligations either express or implied in an instrument in writing. Arent Fox does not dispute that Dare Investments first became aware of its causes of action on February 11, 2011 when it received a copy of Arent Fox's 02-12-06 internal e-mail in which Arent Fox admits knowing about the fraud prior to Dare Investments' infusion of $5 million into its escrow account.

---

with fraud of the first order." Id. However, Arent Fox fails to mention that Dare Investments was not present –nor did it have any reason to be present - at the February 27, 2006 hearing. See Exhibit J to Arent Fox's Brief.

[15] See 22 N.Y. Comp. Codes R. & Regs. 1200.0 (Rules of Professional Conduct) Rule 1.15(a) and that it exposed itself to criminal sanctions and treble civil damages pursuant to NY Judiciary Law § 487: Misconduct by Attorneys.

[16] See Arent Fox Memorandum at vii. The claim of being a "highly respected law firm" is purely subjective. See, Bloomberg, Arent Fox Loses Bankruptcy Client Over Ethical Breach, 11-05-2010 (http://www.businessweek.com/news/2010-11-05/arent-fox-loses-bankruptcy-client-over-ethical-breach.html) See also Judge Shiff's comment that Arent Fox had violated Court Orders, Complaint at ¶ 27. Arent Fox is currently subject to an adversary proceeding initiated by the subsequent trustee in the FCCG Bankruptcy for, inter alia, malpractice and "deceit" pursuant to NY Judiciary Law § 487: Misconduct by Attorneys. (Judicial Notice) See Exhibit 7.

In light of these admissions and positions, Arent Fox inexplicably argues that it is not subject to liability.

### 1) THE COMPLAINT STATES A CAUSE OF ACTION UNDER TWOMBLY

Dare's Complaint is a well-crafted narrative of the events forming the bases for Plaintiff's causes of action. The allegations are clear, concise, plain and easily understood. Dare supports its material allegations with references to the FCCG Bankruptcy Docket and appended Exhibits 1-8. As such, Plaintiff's allegations are entitled to the presumption of truth and plainly "state a claim to relief that is plausible on its face". Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007); Robbins v. Oklahoma, 519 F.3d 1242, 1247-48 (10th Cir. 2008).

Dare's Complaint discloses Arent Fox's representation of the debtor in the FCCG Bankruptcy (¶¶6-8) and its application for and approval of costs and attorney's fees in the amount of $1,957,067.67 (¶¶9-11). It factually alleges Arent Fox's knowledge that the FCCG Bankruptcy Estate did not have sufficient funds to pay unless Arent Fox could affect a sale of the Assets. (¶¶12-13)

Having established Arent Fox's financial motive for its subsequent breaches, frauds and failures to disclose, the Complaint recounts Arent Fox's several attempts to sell FCCG Bankruptcy Assets to SWJ Holdings, LLC so it could collect its fees (¶¶14-29). The Complaint carefully examines Arent Fox's agreement to hold the BBG's in trust. (¶¶22-25) The Complaint discloses Arent

Fox's unauthorized attempts to sell the BBG's to Societe Banque Privee, S.A. of Geneva, Switzerland (¶27) and the Court's determination that Arent Fox violated a Court Order in doing so. (¶¶26-27)

The Complaint discloses that Arent Fox then hired Bangkok attorneys to investigate the validity of the BGG's. The Bangkok attorneys confirmed that the BBG's were fraudulent. As proof of this allegation, the Complaint appends the actual e-mail and letter from Bangkok Counsel disclosing the fraudulent nature of the BGG's. The Complaint makes a reasonable observation that the BBG fraud greatly jeopardized Arent Fox's ability to get paid. ¶30.

The Complaint continues with a careful analysis of Arent Fox's subsequent efforts to ensure infusion of cash money into the Bankruptcy Estate. In ¶¶30- 33, 48, the Complaint recounts Arent Fox's search for a lender to support the sale of the Bankruptcy Assets to SWJ. In ¶¶ 32-35, the Complaint discloses the discovery of Dare Investments as a potential $5 million lender. In ¶ 38, the Complaint discloses Dare Investments' reliance on the BGG's. In ¶39, the Complaint reiterates the fraudulent nature of the BGG's. In ¶¶ 29-30, 40, the Complaint reiterates Arent Fox's express knowledge of the fraudulent nature of the BGG's. In ¶¶ 41, 42, the Complaint discloses that on February 15, 2006, Dare Investments wired $5 million to Arent Fox.

In ¶¶ 43, 44 (a – e), 45 (a – e), 46 (a-j), 47 and 48, the Complaint describes Arent Fox's breaches of fiduciary duty and, with particularity, its failure to disclose material information. In ¶¶ 49 – 60, the Complaint discloses Arent Fox's intentional and affirmative concealment of its knowledge of the fraudulent and worthless BBG's. Paragraph 49 cites from the damning February 12, 2006 e-mail in which Arent Fox admits knowing the fraud, but decides to wait until Dare wires the money into its escrow account.  In ¶ 67, the Complaint confirms that "[a]fter close, Arent Fox received $1,440,000 from the proceeds of the Dare $5 million loan (referencing Doc 1146 as proof of payment)".

As a direct and proximate result of Arent Fox's breach of its duty to disclose, Dare entered into the SWJ loan transaction. Had Arent Fox discharged its duty of disclosure, Dare would not have lent – and lost - $5 million.  See Complaint at ¶¶ 78, 84, 90, 96-97, 104-105, 109-110, and 115-116.

Arent Fox's assertion that the Complaint fails to satisfy the Twombly standard is meritless.

2) **ANALYSIS OF THE ESCROW AGREEMENT UNDER NEW YORK LAW**

Arent Fox's fiduciary duties as the escrowee are at the center of Defendant's Motion to Dismiss. At pages vii and viii of its Brief, Arent Fox suggests that the Escrow Agreement "provides no basis for any of Dare's legal theories…". However, since Arent Fox's spirited defense is founded upon its (attempted)

Dare Investments v. Arent Fox

contractual limitation of its own fiduciary obligations and liabilities, a deeper analysis of the Escrow Agreement is required.

Escrow Agreement contains a New York choice of law provision. Therefore, Dare will apply New York law to the construction, enforcement and administration of the Escrow Agreement to show that:

(a) Under New York law, Arent Fox's fiduciary duty is founded upon the Escrow Agreement, an instrument in writing;

(b) New York Rules of Professional Responsibility and Judiciary Law § 487 imposes fiduciary duties upon Arent Fox irrespective of and in addition to the Escrow Agreement; and

(c) New York law specifically provides that contractual limitations of liability are unenforceable.

### a. Under New York Law, Arent Fox's Fiduciary Duty Is Founded Upon An Instrument in Writing – the Escrow Agreement

In order to establish an escrow relationship under New York law, "**there must be a written agreement** under which the grantor deposits property with and relinquishes control to an escrowee with the subsequent delivery of the property by the escrowee to the grantee conditioned upon the happening of some event." (emphasis supplied) <u>Doran v. Treiling (In re Treiling),</u> 21 B.R. 940, 943 (Bankr. E.D.N.Y.1982). Put another way, **an escrow arrangement requires "a valid contract** and absent such a contract the mere delivery of the instrument or property

to an escrowee does not constitute a transaction in escrow." (Emphasis supplied) National Union Fire Ins. Co. Pittsburgh, Pa. v. Proskauer Rose Goetz & Mendelsohn, 165 Misc.2d 539, 545, 634 N.Y.S.2d 609, 614 (Sup.Ct. N.Y. County 1994), aff'd, 227 A.D.2d 106, 642 N.Y.S.2d 505 (1st Dep't 1996). See also Director Door Corp. v. Marchese & Sallah, P.C., 511 N.Y.S.2d 930, 931, 127 A.D.2d 735, 736 (N.Y.A.D. 2 Dept., 1987) ("When it came to the defendant's attention as a depository of the escrow check that the plaintiff was being defrauded …, its fiduciary relationship imposed upon it a duty to disclose the fraud to the plaintiff. Its failure to do so renders the defendant liable for the damages suffered by the plaintiff (55 N.Y.Jur.2d, Escrows, §§ 15, 24, p. 603, 611)."

Thus, Arent Fox's fiduciary duties are founded, in part, upon the Escrow Agreement itself; without the existence of this instrument in writing, New York common law would not recognize Arent Fox's fiduciary duty to Dare.

### b. New York Statutory and Regulatory Law Created Additional Duties On Arent Fox, New York Lawyers

In addition to the contractually created fiduciary duty, Arent Fox, as New York lawyers and recipients of Dare's $5 million loan to SWJ, owed Dare independently created fiduciary duty. 22 N.Y. Comp. Codes R. & Regs. 1200.0 (Rules of Professional Conduct) Rule 1.15(a) provides that "[a] lawyer in possession of any funds or other property belonging to another person, where such possession is incident to his or her practice of law, is a fiduciary ...".

Dare Investments v. Arent Fox

Moreover, NY Judiciary Law § 487, <u>Misconduct by Attorneys</u>, prohibits attorneys from acting deceitfully or agreeing to act deceitfully. ("An attorney or counselor who [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party …is guilty of a misdemeanor, and …forfeits to the injured party treble damages, to be recovered in a civil action.") Thus, Arent Fox's fiduciary obligation to Dare is unquestionable[17].

### c. Arent Fox Could Not Contractually Limit Its Own Liability Under New York Law

As New York lawyers, Arent Fox's lawyers knew, or should have known, the scope of their own obligations as contractual escrowees and lawyers accepting third party funds into their own escrow account.  One is not surprised, then, that the Escrow Agreement is replete with attempts to limit Arent Fox liability. However, Arent Fox's attempts at limiting its own liability are unenforceable under New York law as a matter of law.

New York law jealously guards against contractual limitations of liability by anyone, and particularly by a fiduciary. A contractual provision limiting liability is enforceable only in the absence of (1) a special relationship between the parties, or

---

[17] Fiduciary duty imposes a stringent standard of conduct that requires a fiduciary to act with "undivided and undiluted loyalty'" <u>Blue Chip Emerald v. Allied Partners</u>, 299 AD2d 278, 279 (2002) quoting <u>Birnbaum v. Birnbaum</u>, 73 NY2d 461, 466 (1989), citing <u>Meinhard v. Salmon</u>, 249 NY 458, 463-464 (1928). "Consistent with this stringent standard of conduct, ... when a fiduciary... deals with the beneficiary of the duty in a matter relating to the fiduciary relationship, the fiduciary is strictly obligated to make full disclosure' of all material facts," meaning those "that could reasonably bear on [the beneficiary's] consideration of [the fiduciary's] offer'". <u>Blue Chip Emerald</u> at 279, quoting <u>Dubbs v. Stribling & Assoc.</u>, 96 NY2d 337, 341 (2001).

(2) a statutory prohibition or (3) an overriding public policy.  <u>Sommer v. Federal Signal Corp.</u>, 79 NY2d 540, 553 (1992); <u>Peluso v. Tauscher Cronacher Professional Engrs.</u>, 270 AD2d 325, 325 (2000)

Here, the Escrow Agreement and Rule 1.15 of the NY Rules of Professional Conduct create a "special [fiduciary] relationship between Arent Fox and Dare Investments. <u>Sommer</u>, supra; <u>Peluso</u>, supra; 22 N.Y. Comp. Codes R. & Regs. 1200.0 (Rules of Professional Conduct) Rule 1.15(a).  Therefore, based on the "special relationship" between the parties, Arent Fox's attempts at limiting its own liability are unenforceable.

Additionally, the statutory prohibition against "deceit or collusion … with intent to deceive any party…" <u>see</u> NY Judiciary Law § 487, supra, represents a statutory prohibition against limitation of liability for acts of deceit.

Finally, even in the absence of a fiduciary relationship, a limitation of liability clause is enforceable <u>only</u> against claims of ordinary negligence; such clause cannot limit liability for gross negligence or intentional misconduct, i.e., conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.  <u>Colnaghi, U.S.A. v. Jewelers Protection Servs.</u>, 81 NY2d 821 (1993); <u>Sommer v. Federal Signal Corp</u>., supra;  <u>Schietinger v. Tauscher Cronacher Professional Engrs, P.C.</u>, 40 AD3d 954 (2007); <u>Obremski v. Image Bank, Inc</u>., 30 AD3d 1141 (2006) Even the Escrow Agreement recognizes that the

9

attempted limit on liability does not apply to  "gross negligence or willful misconduct". <u>See</u> Escrow Agreement at 1(G).

Therefore, pursuant to New York law which governs the enforceability of the Escrow Agreement, the limitation of liability clauses are unenforceable as a matter of law.

### 3) PLAINTIFF HAD THE RIGHT TO RELY ON ARENT FOX TO DISCLOSE MATERIAL INFORMATION

Arent Fox's entire "reliance" argument on pp. 7-10 is based on the proposition that Dare investigated – or should have investigated – Arent Fox's self-interest and the legal viability of the BBG's.  Arent Fox places unwarranted and utterly misplaced emphasis on the New York cases dealing with reliance upon non-fiduciaries.  For example, Arent Fox cites to <u>Washington Capital Ventures, LLC v. Dynamicsoft</u>, 373 F.Supp.2d 360 (S.D.N.Y., 2005).

The <u>Washington Capital</u> case involved a failure to read the terms of a put agreement by a sophisticated investor. <u>Washington Capital</u>, 373 F. Supp 2nd at 366-67. The <u>Washington Capital</u> case does <u>not</u> involve a fiduciary and does <u>not</u> apply to Arent Fox.

Arent Fox does not cite, however, to the case that specifically addresses a beneficiary's right to rely on his fiduciary. In <u>World Wrestling Entertainment v. Jakks Pacific</u>, 530 F.Supp.2d 486 (S.D.N.Y., 2007) the Court explained:

Dare Investments v. Arent Fox

> In the Second Circuit, however, courts agree that a party has a right to rely upon the representations of its fiduciary, but "only to a point." Addeo v. Braver, 956 F.Supp. 443, 451-52 (S.D.N.Y. 1997) ("Once plaintiffs were thereby left with reason to be suspicious of [their fiduciary], it was no longer reasonable for them to defer to his representations."); *see also* Butala v. Agashiwala, 916 F.Supp. 314, 320 (S.D.N.Y.1996) ("Whatever duties the defendants owed to the plaintiffs, their alleged failure to disclose facts would not excuse the plaintiffs' lack of diligence in investigating the facts of which they were unquestionably aware." (internal citations omitted)). Thus, it is not reasonable to rely on fiduciaries once the plaintiff is aware of facts that would lead a reasonable person to no longer trust its fiduciary.

Id., 530 F. Supp. 2nd at 528. Here, Dare Investments had no "reason to be suspicious" of Arent Fox's self-interest, or its knowledge of the BBG's fraud, or its knowledge of SWJ's inability to repay the $5 million loan. To the contrary, there is clear indication that it was "reasonable for [Dare] to defer" to Arent Fox's duties to act in good faith and make appropriate disclosures. See Addeo v. Braver, 956 F.Supp. at 451-52. Dare was aware of no facts that would lead it to no longer trust Arent Fox and, therefore, Dare's reliance on Arent Fox's duty to disclose was justifiable. See World Wrestling Entertainment, 530 F. Supp. 2nd at 528.

## 4) STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFF'S CLAIMS

Arent Fox claims that Plaintiff's claims are "barred by the applicable statute of limitations". See Arent Fox's Brief at viii. Unlike substantive interpretation of the Escrow Agreement which is governed by New York law, Utah law dictates the applicability of the relevant statutes of limitations. Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709, 712 (10th Cir.2005)

11

Dare Investments v. Arent Fox

### a. Plaintiff's Claims

For purposes of determining the statute of limitations, it is the gravamen of the claims which governs, not the form in which they are pleaded. <u>Cathco v. Valentiner Crane Brunjes Onyon Architects</u>, 944 P.2d 365 (Utah 1997) The gist of Plaintiff's claims is that Arent Fox, as Plaintiff's fiduciary, failed to alert Plaintiff (i) that certain Bangkok Bank Guarantees upon which Plaintiff relied in making a $5 million investment were fraudulent, (ii) that Arent Fox had a personal self-interest in Dare Investment's $5 million, and (iii) that SWJ had previously misstated its ability to complete the sale transaction. <u>See</u> Complaint at ¶¶ 47-48. In the absence of a fiduciary relationship, these types of claims are normally classified as breaches of the covenant of good faith and fair dealing[18]. When a fiduciary relationship is involved, however, Plaintiff's claims may be broadened to include a breach of fiduciary duty (Counts 3), failure to disclose and constructive fraud (Count 4), negligent misrepresentation / failure to disclose (Count 5), aiding and abetting fraud (Count 6) and conspiracy to defraud (Count 7).

Plaintiff's complaint alleges a breach of the implied covenant of "good faith and fair dealing" and a breach of the heightened standard of good faith applicable to fiduciaries. Both types of claims are implicit in the Escrow Agreement and the breach of these claims is, therefore, "founded upon an instrument in writing".

---

[18] As they were brought here, see Count 1 (Breach of Contract / Breach of Implied Covenant of Good Faith and Fair dealing)

Dare Investments v. Arent Fox

### b. Six Year Statute Of Limitations Applies to Claims "Founded Upon An Instrument In Writing"

#### i. Causes Of Action That Would Not Exist But For The Contract Are Governed By Utah's 6 Year Statute of Limitations

In determining whether a cause of action is subject to a 6 year statute of limitations based on contract[19], Utah law asks whether Plaintiff's cause of action could have been brought in the absence of a written contract. If a cause of action is dependent upon an instrument in writing, then the 6 year statute of limitations applies.

For example, in Brigham Young Univ. v. Paulsen Constr. Co., 744 P.2d 1370 (Utah 1987), BYU commenced an action for negligent failure of the construction contractors to perform their supervisory responsibilities to ensure proper installation of certain underground pipes. The trial Court dismissed the cause of action on the basis that the negligent supervision was governed by a 3 and not 6 year statute of limitations. The Utah Supreme Court reversed, stating:

> Absent the contractual obligations of [the contractors] to BYU, the two contractors would have had no obligation to supervise construction of the Missionary Training Center. Only the alleged breach of their contractual duties gives BYU any basis for asserting that they are liable for the cost of replacing the pipes. BYU's claims are, therefore, actions upon contracts founded on instruments in writing and, as such, clearly fall within the scope of the six-year period of limitation in section 78-12-23. Id., 744 P.2d at 1372.

---

[19] Utah Code Ann. § 78B-2-309(2)

Here, as in <u>Brigham Young University</u>, "absent the contractual [relationship between the parties, Arent Fox] would have had no [fiduciary] obligation to [Dare]". Here, as in <u>Brigham Young University</u>, Utah's 6 year statute of limitations applies to the breach of fiduciary duty. <u>See</u> also <u>O'Brien v. King</u>, 174 Cal. 769, 164 P. 631 (1917) (The applicable limitation period for an action based upon the negligent performance of an implied obligation which is based upon a contract in writing is founded upon an instrument in writing[20].)

ii.  <u>Breach of Promises Implied In Contract Are Governed by Utah's 6 Year Statute of Limitations</u>

Under New York law, the implied covenant of good faith and fair dealing encompasses "promises which a reasonable person in the position of the promisee would be justified in understanding were included". <u>511 W. 232nd Owners Corp</u>., 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (2002). For statute of limitations purposes, a "promise which the law implies as an element of the contract is as much a part of the instrument as if it were written out". <u>Comunale v. Traders & General Ins. Co</u>., 328 P.2d 198, 203, 50 Cal.2d 654 (Cal. 1958) Utah Supreme Court agrees. In <u>Valley Colour, Inc. v. Beuchert Builders, Inc</u>., 944 P.2d 361 (Utah 1997), the Utah Supreme Court confirmed that a "[b]reach of the [implied] covenant of good faith and fair dealing … [is] governed by the six-year

---

[20] Dare cites to California Cases from which Dare believes Utah 6 year statute of limitations derives.

limitation period for written instruments contained in Utah Code Ann. § 78-12-23") <u>Id</u>., 944 P.2d at 364.

Arent Fox's heightened duty of fiduciary good faith was created contractually. It is wholly dependent upon the execution of the written Escrow Agreement. The breach of Arent Fox's fiduciary good faith is subject to Utah's 6 year statute of limitations.

To reiterate the clarity of this point, the breach of the covenant of good faith and fair dealing <u>and</u> the heightened covenant of good faith applicable to Arent Fox as Dare's fiduciary are both "founded upon" the written Escrow Agreement. Without the written Escrow Agreement, there would be no escrow relationship, no contractually created fiduciary relationship, and no contractually created covenant of good faith and fair dealing.  In the absence of the Escrow Agreement, Arent Fox would owe Dare Investments no contractual duty, express or implied, at all.

      iii.  <u>Arent Fox's Breach of Ethical Standards Is A Contractual Claim</u>

New York imposes an independent fiduciary duty on a lawyer who, incidental to his practice of law, accepts third party's funds. <u>See</u> 22 N.Y. Comp. Codes R. & Regs. 1200.0 (Rules of Professional Conduct) Rule 1.15(a). A breach of this duty is a breach of contract. <u>Wieder v. Skala</u>, 80 N.Y.2d 628, 593 N.Y.S.2d 752, 756 (N.Y., 1992).

In Wieder, an associate at a law firm claimed that he had been discharged for insisting that the firm report unethical conduct of another associate at the same firm, which conduct included numerous misrepresentations and acts of malpractice against clients and acts of forgery of checks drawn on the firm's account. The court held that Wieder stated a **valid claim for breach of contract based upon an implied-in-law** obligation in his relationship with the law firm. The Court reasoned that intrinsic to the relationship between Wieder and the law firm was an unstated but essential compact that in conducting the firm's legal practice, both Wieder and the firm would do so in compliance with the prevailing rules of conduct and ethical standards of the legal profession[21].

An equally unstated but essential compact between Dare and Arent Fox was that Arent Fox would comply with 22 N.Y. Comp. Codes R. & Regs. 1200.0 (Rules of Professional Conduct) Rule 1.15(a). By failing to comply with the fiduciary duty imposed by NY Rules of Professional Responsibility, Arent Fox breached the Escrow Agreement, an "instrument in writing".

## 5) STATUTORY AND EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS

In the event the Court disagrees with Plaintiff's analysis relating to the applicability of the 6 year Utah statute of limitations, and in order to specifically

---

[21] According to Wieder, a breach of contract occurs only when an implied term is "fundamental" to the parties "expectations". Wieder, 80 N.Y.2d at 637, N.Y.S.2d at 756 (N.Y., 1992) However, the Court in Wieder cautioned that not every breach of the rules of professional responsibility will give rise to a claim for breach of contract. Id.

address Utah's 3 year Statute of Limitations based on actions for fraud, Dare's actions are still timely based on Utah's well developed statutory and equitable tolling doctrines.

It is undisputed that <u>Plaintiff first learned of Arent Fox's fraud on February 11, 2011</u> during pre-filing due diligence investigation. The all important piece of information regarding Arent Fox's prior knowledge of fraudulent BBG's was first discovered on February 11, 2011 when Dare received a copy of the February 12, 2006 e-mail from Grossman to Carter. (Exhibit 4) ("Schreiber[22] and Gordon Duval also insist that they will, prior to Wed fund a compromise proposal. Most BK judges will take the money, if offered and not involve themselves in the question of possible criminal acts by the non debtor".) Id.

Arent Fox ultimately chose to disclose the BBG fraud to the Court on February 27, 2006. <u>See</u> Arent Fox SOF ¶¶ 46-48. This disclosure occurred only <u>after</u> Arent Fox breached its fiduciary duty, failed to disclose this information to Dare, and induced Dare to deposit the money into Arent Fox's account. Id. Additionally, Dare was not present, nor did it have reason to be present, at the February 27, 2006 hearing. The salient fact remains, however, that Arent Fox failed to disclose the  BBG's fraud to Dare, failed to disclose its self-interest, and failed to disclose SWJ's inability to repay the loan.

---

[22] Schreiber was the attorney for SWJ.

Dare Investments v. Arent Fox

### a. The Statute Of Limitations Tolled On All Claims, Including Fraud Claims, Until The Discovery Of Arent Fox's Prior Knowledge

The discovery rule operates to toll a statute of limitations "until the discovery of facts forming the basis for the cause of action." <u>Russell Packard Dev., Inc. v. Carson</u>, 2005 UT 14, ¶ 21, 108 P.3d 741, 746 (Utah, 2005) Here, the "facts forming the basis for the cause of action" include Arent Fox's prior knowledge of the BBG fraud, its own self-interest, and SWJ's inability to repay the loan.

There are two types of discovery rules: a "statutory discovery rule" and an "equitable discovery rule." <u>Russell Packard</u>. An example of a statutory discovery rule is found in the three-year statute of limitations governing claims based on fraud or mistake, which provides that a cause of action will not accrue "until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Utah Code Ann. § 78-12-26(3) (2002). As is evident from this statutory directive, "the question is not whether the discovery rule applies — it does by virtue of the statute, but rather, when a plaintiff either discovered or should have discovered his or her cause of action, thereby triggering the running of the statute of limitations." Id.

<u>Determining when a plaintiff either discovered or reasonably should have discovered his or her cause of action is often a difficult and intensely fact-dependent inquiry.</u> <u>Id.</u> Once the triggering event identified by the statutory

Dare Investments v. Arent Fox

discovery rule occurs — i.e., when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action — the statutory limitations period begins to run and a plaintiff who desires to file a claim must do so within the time specified in the statute. Id.

Here, Dare Investments first learned of Arent Fox's possible fraud and self-interest during his visit with Peter Mocco of New Jersey on May 11, 2009 when Mr. Mocco shared with Mr. McCloskey's his (Mr. Mocco's) belief that the BBG's were fraudulent. Dare did not discover Arent Fox's actual knowledge of the fraudulent BBG's until February 11, 2011. Exhibit 5. <u>All</u> fiduciary causes of action arise out of the discovery of Arent Fox's <u>prior knowledge</u> of fraudulent BBF's, its self-dealing and its failure to disclose SWJ's inability to repay the loan. It is likewise undisputed that Arent Fox's took affirmative steps to conceal its knowledge of the frauds by marking the e-mail (Exhibit 1) as "CONFIDENTIAL"[23].

### 6) UTAH FORUM IS THE ONLY FAIR, PROPER AND CONVENIENT FORUM

Arent Fox requests that this matter be transferred to the Honorable Alan H.W. Shiff, the judge presiding in the FCCG Bankruptcy. Brief at 14 -15, 19. However, since the Connecticut Bankruptcy Court has no jurisdiction over this

---

[23] The Statutes of Limitation have also tolled under the "exceptional circumstances" doctrine. <u>See</u> <u>Sevy v. Security Title Co. of S. Utah</u>, 902 P.2d 629, 636 (Utah 1995)

Dare Investments v. Arent Fox

matter, and, in any event, the only convenient and proper forum is in Utah, Arent

Fox's request for transfer must be denied

### a. Connecticut Bankruptcy Court Lacks Subject Matter Jurisdiction to Hear This Case

The "jurisdiction of the bankruptcy courts, like that of other federal courts, is

grounded in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307

(1995). 28 U.S.C. § 1334 confers upon District Court the original, but not

exclusive, jurisdiction of all civil proceedings "arising under title 11, or arising in

or related to cases under title 11". The Court in In re Grand Cent. Bldg. LLC

(Bankr.N.D.W.Va., 2011) explained the interplay between "arising under",

"arising in" and "related to":

> Controversies arise in title 11 when they "'are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy[; i]n other words, a 'controversy arises in Title 11' when 'it would have no practical existence but for the bankruptcy.'" Grausz v. Englander, 321 F.3d 467, 471 (4th Cir. 2003) (citations omitted). Claims arise under title 11 if the claims "clearly invoke substantive rights created by bankruptcy law." Glinka v. Federal Plastics Mfg., Ltd. (In re Housecraft Indus. USA, Inc.), 310 F.3d 64, 70 (2d Cir. 2002). A proceeding is related to a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate. . . [and] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively). . . ." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). See also Celotex, at 308 n.6 (1995) ("[W]hatever ['related to'] test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.") Id. at pp. 3-4).

The current dispute between Dare and Arent Fox cannot possibly have any "effect on the estate of the debtor". No matter who wins or who loses, the debtor in the FCCG Bankruptcy will remain completely unaffected.

### b.  Utah District Court Is The Only Convenient Forum

A motion to transfer venue for *forum non conveniens* is governed by 28 U.S.C. § 1404(a)[24]. "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991). "Merely shifting the inconvenience from one side to the other, however, is not a permissible justification for a change of venue." Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992). The Tenth Circuit has long held that "unless the evidence and the circumstances of the case are strongly in favor of the transfer the plaintiff's choice of forum should not be disturbed." Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967) Thus, the Court must give great weight to Plaintiff's choice of forum. KCJ Corp. v. Kinetic Concepts, Inc., 18 F.Supp. 2d 1212, 1214 (D. Kan. 1998).

In determining whether to transfer this matter, the Court must consider whether the transfer will actually convenience the parties and witnesses. Chrysler

---

[24] The statute grants District Court discretion to transfer venue "[f]or the convenience of parties and witnesses, and in the interest of justice…"

Credit Corp., 928 F.2d at 1516. The Court considers a number of factors in considering the convenience and fairness of transferring a matter, including:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Texas Gulf, 371 F.2d at 147.

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)". Cook v. Atchison, Topeka & Santa Fe Ry. Co., 816 F.Supp. 667, 669 (D. Kan. 1993). To demonstrate inconvenience, the moving party must: (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary. Id.

Arent Fox has failed to identify the witnesses who would be "convenienced" by a trial in Connecticut for the simple reason that Dare, its managing member Richard McCloskey, its counsel, George Pratt, Esq., Gordon Duvall, Esq., are all residents of the State of Utah. These witnesses who would be greatly inconvenienced by a trial in Connecticut. On the other hand, Arent Fox's attorney

responsible for the creation of the escrow, Robert Grossman, Esq., is a resident of New York. The person who actually discovered the fraud, Jessada Sawatdipong, Esq., is a resident Bangkok. The potential witnesses with the greatest general knowledge of the underlying bankruptcy matter are Peter Mocco and James Scarpone, Esq., both of whom are residents of the State of New Jersey. There are no material witnesses who reside in Connecticut.

There is no evidence to show that any of these witnesses are unwilling to come to trial in Utah, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.

The cost of making necessary proof also favors Utah venue since the majority of witnesses and documents are located here.

There is no indication that the Utah Court is any more congested than the Connecticut Bankruptcy Court.  To the contrary, the FCCG Bankruptcy has been pending for almost ten years with no resolution in sight. According to the federal court management statistics released in September 2010[25], this factor favors venue in Utah. Additionally, as a practical matter, the center of gravity for witnesses and documents is in Utah, not Connecticut.

The remaining factors—questions as to the enforceability of a judgment if one is obtained, relative advantages and obstacles to a fair trial, the possibility of

---

[25] http: //www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2010Sep.pl

the existence of questions arising in the area of conflict of laws, and the advantage of having a local court determine questions of local law—are not relevant here. A judgment from Utah will be just as enforceable as one from Connecticut. There are no identified advantages or obstacles to a fair trial in this District. Substantive laws of the State of Connecticut do not apply.

### 7) CONVERSION OF ARENT FOX'S MOTION TO DISMISS TO MOTION FOR SUMMARY JUDGMENT

Arent Fox and Dare Investments both present matters outside the pleadings. When matters outside the pleadings are presented, the Court may treat a motion to dismiss as one for summary judgment and proceed under applicable Rule 56 provisions. Carter v. Stanton, 405 U.S. 669, 671 (1972). Therefore, pursuant to F.R.Civ.P. 12(d), Arent Fox's Motion should be treated as one for summary judgment under Rule 56. There being no genuine issue of material fact, and Dare being entitled to judgment on the breach of covenant of good faith and fair dealing and fiduciary duty as a matter of law, Dare respectfully requests the entry of judgment in its favor in the amount of $5,000,000.00, trebled to $15,000,000.00 pursuant to NY Judiciary Law § 487.

### CONCLUSION AND PRAYER FOR RELIEF

Under New York law, Arent Fox's fiduciary duty is "founded upon an instrument in writing"; therefore, Utah's 6 year statute of limitations applies. Alternatively, Dare first received information that put it on inquiry on May 11,

Dare Investments v. Arent Fox

2009, conducted due diligence and first discovered Arent Fox's prior knowledge on February 11, 2011. The Complaint, filed in March of 2011, is timely.

Transfer of this case to the Connecticut Bankruptcy Court would be inappropriate for lack of jurisdiction. In addition, a transfer of the case to Connecticut would substantially inconvenience the parties and witnesses.

Lastly, both parties submitted matters outside the pleadings. This Motion is subject to conversion to Motion for Summary Judgment. Since the material facts are not in dispute, and the law is clear, Dare moves for summary judgment in its favor in the amount of $5,000,000.00 trebled to $15,000,000.00 pursuant to NY Judiciary Law § 487.

RESPECTFULLY SUBMITTED this 13th day of June, 2011.

**STROJNIK, P.C.**

_____
Peter Strojnik, Esq.
Attorney *pro hac vice* for Plaintiff

25