# AMENDED AND RESTATED MASTER LOAN AGREEMENT

This Amended and Restated Master Loan Agreement, dated March 13, 2006, is between SWJ HOLDINGS, LLC, a Delaware limited liability company ("SWJ"); STEPHEN PODELL ("Podell"), individually; COBRA/VENTURA EQUITIES, LLC, a New Jersey limited liability company ("Cobra"); WILLIAM J. MOURNES (Mournes"), individually; and DARE INVESTMENTS, LLC, a Utah limited liability company ("Dare").

## RECITALS

WHEREAS SWJ is a Delaware limited liability company that has certain contract rights pursuant to a First Amended Asset Purchase Agreement (the "Asset Purchase Agreement") to purchase certain assets of the bankruptcy estate in the consolidated First Connecticut Holding Group, LLC, cases (collectively, "Debtor"), presently in the US Bankruptcy Court, District of Connecticut, case numbers 02-50852, 02-51167, 0251176, and 02-51220 for a net purchase price of $10,850,000 (after application of $400,000 previously paid by to Debtor); and

WHEREAS Mr. Podell is the manager and a member of SWJ; and

WHEREAS Cobra is a New Jersey limited liability company that is a member of SWJ; and

WHEREAS Mr. Mournes is the manager and a member of Cobra; and

WHEREAS Dare is providing a hard money loan to allow for the acquisition of the assets identified in the Asset Purchase Agreement (the "Assets"); and

WHEREAS the parties previously, on February 14, 2006, entered into a certain Master Loan Agreement; and

WHEREAS on March 9, 2006 the bankruptcy court entered an Order approving the sale of assets to SWJ, pursuant to the terms of the Asset Purchase Agreement (the "Order"); and

WHEREAS based on certain events that have taken place since February 14, 2006, the parties now wish to enter into this Amended and Restated Master Loan Agreement replacing and restating the Master Loan Agreement.

THEREFORE IT IS AGREED AS FOLLOWS:

1. **Payment on Behalf of SWJ.** On February 15, 2006, Dare paid on behalf of SWJ and Cobra $5,000,000 to the trust account of Arent Fox, counsel for the Debtor (the "Disbursement"), for disbursement to the appropriate parties in the jointly administered bankruptcy cases, which advance shall constitute a loan to SWJ and Cobra that shall be

731899.35

evidenced by a promissory note in form reasonably acceptable to counsel for Dare (the "Note"). Dare acknowledges that the application of the $5,000,000 held by Arent Fox to the Purchase Price at the closing pursuant to the FAAPA and in accordance with the March 9, 2006 order of the Bankruptcy Court, shall not be a violation of any provision of this Agreement and all conditions precedent to such application under the Amended and Restated Master Loan Agreement have been satisfied.

2. **Note Terms.** The Note shall provide for a lump sum payment to Dare of $12,000,000 payable in full on or before Noon, MST, on December 15, 2006 (the "Maturity Date"). The Note will provide that it may be pre-paid at any time, without penalty. The Note shall further provide that if it is not paid in full by May 16, 2006, SWJ and Cobra agree to an additional consideration equal to 5% of the then-outstanding amount to be added to the principal balance, and an additional 5% shall be added to the principal balance each 180 days thereafter. The Note will further provide that after the Maturity Date, the unpaid principal balance will bear simple interest at the annual rate of 18%, until paid in full. Both SWJ and Cobra shall be makers of the Note.

3. **Loan Collateral.** The Note shall be secured by a senior security interest in favor of Dare in all of the Assets, subject only to the relative priorities provided in the next succeeding section of this Agreement ("Dare's Security Interest"), and pursuant to such security agreements, collateral assignments, financing statements and other documents as counsel for Dare shall reasonably require.

4. **Relative Priority of Dare Security Interest with Security Interest of Debtor's Creditors.** The $5,850,000 balance owed to the Debtor (the "Debtor Obligation") remaining after payment of the $5,000,000 advanced by Dare pursuant to the February 2, 2006, court order in the bankruptcy cases shall be secured by a collateral assignment of the Assets (the "Creditors' Security Interest"). SWJ's agreement with the Debtor and its creditors shall provide that for the first $6,000,000 owed under the Note, Dare's Security Interest in the Assets shall be in a first lien position; for the first $2,000,000 owed on the Debtor Obligation, the Creditors' Security Interest shall be in a second lien position; for the next $2,000,000 owed on the Note (after the payment of the $6,000,000 under the Note as provided previously), Dare's Security Interest in the Assets shall be in a third lien position; for the remaining balance owed on the Debtor Obligation (after payment of the first $2,000,000 on the Debtor Obligation as provided for above), the Creditors' Security Interest in the Assets shall be in a fourth lien position; and for the remaining balance owed on the Note, Dare's Security Interest in the Assets shall be in a fifth lien position, until the Note is paid in full. SWJ's agreement with the Debtor and its creditors shall further provide that prior to the maturity date of the promissory note secured by the Creditors' Security Interest, the bankruptcy creditors may not foreclose without the prior written consent of Dare.

5. **Title to Assets.** Prior to granting Dare's Security Interest to Dare, SWJ shall acquire the Assets free and clear of all adverse liens, interests and encumbrances within the meaning of 11 U.S.C. Section 363, as provided in the February 2, 2006, bankruptcy court order.

6. **Limitation on Transfer.** Until the Note has been paid in full, none of the Assets may be sold, transferred or otherwise encumbered without seven (7) days' prior written notice to Dare.

7. **Releases.** Upon Full Payment (as defined in the Order), the bankruptcy estate, SWJ and Cobra shall enter into reciprocal releases signed by all parties for all claims except those arising under the agreement to sell the Assets.

8. **Conditioned Upon Delivery of Commitment to Issue Policy of Title Insurance.** All of Dare's obligations hereunder, and any disbursement of the Disbursement to the Debtor or its creditors, are expressly conditioned upon receipt, by Dare, of a commitment to issue a lender's policy of title insurance from Chicago Title Insurance Company, issued by its agent, Horizon Title Agency, in the amount of $5,500,000, with respect to the mortgagee's interest of First Connecticut Consulting Group, Inc. ("FCCG") under the Mortgage from Lorraine Mocco to FCCG, pledging Lot(s) 1 in Blocks 249, 250, and 251, as shown on the Tax Map of the Borough of Sayreville, New Jersey, which commitment shall be in a form acceptable to Dare.

9. **Conditioned upon Court Approval.** All of Dare's obligations hereunder, and any disbursement of the Disbursement to the Debtor or its creditors are expressly conditional on amendment of the February 2, 2006, bankruptcy court order and approval of the terms of this Agreement by a further final and non-appealable order. SWJ's agreement with the Debtor shall provide that if the bankruptcy court rejects the proposed modification, the Disbursement funds shall be returned to Dare within 24 hours of such rejection.

10. **Loan Fee.** Dare acknowledges receipt of a $50,000 loan fee from SWJ and Cobra, which shall be additional consideration to Dare and to reimburse Dare for its professional fees incurred in connection with this transaction.

11. **Transfer of Membership Interest in SWJ.** Upon closing of the purchase of the Assets from the Debtor, Cobra shall transfer 10% of its membership interest in SWJ to Dare, free and clear of all adverse interests, as additional consideration. If the Note is not paid in full before May 16, 2006, then Cobra shall transfer an additional 5% of its membership interest to Dare, free and clear of all adverse interests. If the Note is not paid within 180 days, then Cobra shall transfer an additional 5% interest to Dare, free and clear of all adverse interests.

12. **Transfer of Membership Interest in Cobra.** Upon closing of the purchase of the Assets from the Debtor, Mournes shall transfer 5% of his membership interest in Cobra to Dare, free and clear of all adverse interests.

13. **Guarantee.** The Assets which will be conveyed to secure the Note, as provided for in this Agreement, shall also secure all existing obligations of Cobra to Dare (the "Cobra Obligations"). Cobra acknowledges that the balance on those obligations, as of February 27, 2006, is $5,172,224.89, and that interest continues to accrue on those obligations at the rate of $2,198.63 per day. SWJ shall enter into a security agreement with Dare conveying to Dare a security interest in all the Assets (which shall be junior to the security interests described in

731899.35                                    3

paragraph 4 above, securing the Debtor Obligation and the Note). Further, following his outright transfer to Dare of a 5% interest (as provided for in paragraph 12 above), Mournes shall convey to Dare a security interest in his entire membership interest in Cobra to secure both the Note and the Cobra Obligations.

14. **Participation in Repayment to Utah Investors.** As a member of Cobra, Dare may participate in the negotiations regarding repayment of the debts owed to the Utah investors.

15. **Entire Agreement.** This Agreement constitutes the entire agreement and understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements and understandings written and oral, among the parties with respect to such subject matter.

16. **Utah Law Applicable.** This Agreement and any issue arising under or relating to it shall be construed under the laws of the state of Utah, without resort to its choice of laws or other conflicts of laws principles.

17. **Attorneys Fees.** In the event of a default under this Agreement, the defaulting party shall pay all reasonable attorneys fees and costs incurred by the non-defaulting part(ies) to enforce his or its (as the case may be) rights and remedies under this Agreement.

18. **Execution in Counterparts.** This Agreement may be executed in two or more counterparts, and shall be deemed to be fully executed when signed by all parties to the Agreement.

SWJ HOLDINGS, LLC

_____  _____
STEPHEN PODELL, managing member    STEPHEN PODELL, individually


COBRA/VENTURA EQUITIES, LLC

_____  _____
WILLIAM J. MOURNES, managing member   WILLIAM J. MOURNES, individually


DARE INVESTMENTS, LLC

731899.35                          4

*[signature]*

Richard D. McCloskey, Jr., managing member