Peter N. Wang
Douglas S. Heffer
FOLEY & LARDNER, LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Email: pwang@foley.com
*Attorneys for Defendant Arent Fox LLP*
*Pro Hac Vice*

Robert R. Wallace (3366)
Michael D. Johnston (11273)
KIRTON & McCONKIE PC.
1800 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84145-0120
Telephone: (801) 328-3600
Email: rwallace@kmclaw.com
*Attorneys for Defendant Arent Fox LLP*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| DARE INVESTMENTS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>ARENT FOX LLP f/k/a ARENT FOX KINTNER PLOTKIN & KAHN, PLLC, a New York Limited Liability Partnership**,**<br><br>    Defendants. | **MEMORANDUM OF LAW AND COUNTERSTATEMENT OF MATERIAL FACTS IN DISPUTE IN OPPOSITION TO PLAINTIFF'S "CROSS-MOTION" FOR SUMMARY JUDGMENT**<br><br>Civil File No.:  2:11CV00266<br>Judge Dale A. Kimball |

Defendant Arent Fox LLP ("Arent Fox") by and through its undersigned counsel, Foley & Lardner LLP and Kirton & McConkie P.C., submits this Memorandum of Law Counterstatement of Material Facts in Dispute in opposition to Plaintiff Dare Investments, LLC's ("Dare") cross-motion for partial summary judgment.

In its opposition to Arent Fox's Motion to Dismiss, Dare appears to take a half-hearted swipe at a cross-motion for partial summary judgment on Counts One (Breach of Contract) and Three (Breach of Fiduciary Duty). Dare's entire purported cross-motion consists of a single sentence: "There being no genuine issue of material fact, and Dare being entitled to judgment on the breach of covenant of good faith and fair dealing and fiduciary duty as a matter of law, Dare respectfully requests the entry of judgment in its favor in the amount of $5,000,000.00, trebled to $15,000,000.00 pursuant to NY Judiciary Law § 487." Opp. Memorandum at p. 24. Dare's "Statement of Undisputed Facts" is filled with legal conclusions masquerading as factual statements. Moreover, a significant portion of Dare's Statement is based on the wholly conclusory and self-serving affidavit of Dare's principal, Richard McCloskey. As the Tenth Circuit has made clear, "summary judgments cannot be made to rest on purely conclusory statements, either in pleading or affidavit form." Morgan v. Willingham, 424 F.2d 200 (10th Cir. 1970); see also Aludo v. Denver Area Counsel, No. 06-CV-02257-LIB-MJW, 2008 WL 2782734, at *1 (D. Colo. July 8, 2008) (unreported) ("Courts should also disregard statements in affidavits that are not based upon personal knowledge, are speculative or otherwise unsubstantiated, or are conclusory and self-serving."); and Rule 56(c)(4), Federal Rules of Civil Procedure. The sole purpose of the "cross-motion" is to serve as a counterweight to Arent Fox's Motion to Dismiss or Transfer, in the hope that the Court will offset one motion with the other. We are confident that the Court will not be swayed by this transparent gambit.

As set forth in detail in Arent Fox's Motion to Dismiss, the record in this case already makes clear that Dare's claims are completely without merit.  The outrageous nature of Dare's request for partial summary judgment is further underscored by the fact that no amount of discovery has taken place in this action to date, thus making it impossible for Arent Fox to test certain of the unsupported allegations contained both in the Complaint and Mr. McCloskey's affidavit.  It is well-settled that "discovery is strongly favored before summary judgment is granted." Enoch v. Dahle/Meyer Imports, LLC, No. 2:05CV409, 2006 WL 547947, at *1 (D. Utah Mar. 6, 2006) (unpublished) (denying summary judgment where "[t]here are factual issues relating to the overall theory of [the] case that remain to be developed and it appears that no discovery has been commenced in this matter") (citations omitted).  Indeed, on the basis of the record evidence already gathered, it is obvious that no amount of discovery will rescue Plaintiff's Complaint, so the notion that Plaintiff is entitled to pre-discovery summary judgment is particularly ironic, to say the least.

Despite all of these infirmities, and in an abundance of caution, Arent Fox hereby responds to Dare's Statement of Undisputed Facts, in corresponding numbered paragraphs, and submits a counterstatement of material facts in dispute, to further illustrate the baseless nature of Dare's cross-motion.

**RESPONSE TO DARE'S STATEMENT OF UNDISPUTED FACTS, AND COUNTERSTATEMENT OF MATERIAL FACTS IN DISPUTE**

1. Not disputed.

2. Not disputed except as to Dare's characterization of Arent Fox as "special counsel" to the Debtor.  Further disputed to the extent that the actual amount of fees and costs approved by orders of the Bankruptcy Court on August 29, 2005 was $1,898,777.60 and not $1,957,067.67 as represented by Dare.  See Exhibit A to Arent Fox's Moving Memorandum at Docket Nos. 814 and 815.

3

>    3.    Not disputed that the Monthly Operating Report for August 2005 indicated that the Debtor had a balance in its escrow bank account of $650,000. Disputed as to Dare's characterization that in order for "Arent Fox to be paid, it had to arrange for a sale of some or all of the Assets." This is a legal conclusion improperly cast as a factual statement. Furthermore, Dare's citation to "Judicial Notice" as support for this conclusion is incomprehensible.
>
>    4.    Not disputed.
>
>    5.    Not disputed except as to Dare's statement that SWJ was unable to close the transaction "because it had no money." There has been no discovery on this issue yet and Dare's citation to "Judicial Notice" does not support this statement.
>
>    6.    Not disputed except as to the reference to multiple bank guarantees. The October 12, 2005 amended sale order makes clear that only one of a larger set of twelve bank guarantees was relevant to the sale transaction. See Amended Sale Order, attached as Exhibit C to Arent Fox's Moving Memorandum.
>
>    7.    Not disputed that a single BBG was deposited with Arent Fox. Disputed that Arent Fox "was not permitted to market the BBG's absent a court order." There is nothing in the October 12, 2005 amended sale order cited by Dare that supports this statement. On the contrary, the order specifically recites that "[i]n the event that the balance of the Second Adjusted PP ($10.6 million) is not paid on or before the Deposit Date, then and in such event, Arent Fox, the Committees and/or SWJ are hereby authorized to use the Bank Guarantee as collateral to secure a loan (the "Authorized Loan"), upon commercially reasonable terms, to CV from a reputable commercial bank or other lending institution having a new worth of at least $1 billion or a third party approved by CV…" Id. at p.4.
>
>    8.    Disputed. As set forth in Paragraph 7 above, there is nothing contained in the amended sale order which prohibited Arent Fox from marketing the BBG. Furthermore, despite

Dare's citations to "Judicial Notice," there is nothing in the record to support the statement that "Arent Fox marketed the BBG's to Societe Banque Privee, S.A. of Geneva, Switzerland, but the Swiss bank would have nothing to do with the BBG's." This "factual" statement also has no relevance to the claims at issue in this action.

9.      Disputed. Dare's statement that "[s]ince there was insufficient money in the bankruptcy estate to pay Arent Fox's approved administrative fees and costs, Arent Fox's ability to be paid out of the BBG's was an important element of Arent Fox's representation of the Debtor" is a legal conclusion improperly cast as a factual statement. To the extent that the Court deems this a statement of fact, it is wholly unsupported by any citation to the record and thus not properly before the Court.

10.     Disputed. Dare's citation to a February 9, 2006 Arent Fox time entry, submitted in conjunction with a fee application, indicating that a teleconference occurred between members of Arent Fox and a member of a Thai law firm in no way supports the baseless conclusion that Arent Fox was advised by the Thai law firm that the "BBG's were fraudulent" on that date. Further, the February 10, 2006 letter from Thai counsel speaks for itself but it does not provide "confirmation of the BBG fraud."

11.     Disputed. No discovery has been conducted as to whether the "BBG's were fraudulent and worthless" and thus Arent Fox has not had the ability to test this conclusory allegation. It is further disputed that "Arent Fox began searching for other sources of money." In fact, it was Mr. McCloskey who "volunteered" to loan CV and SWJ $5 million. See McCloskey Transcript at 14:22-15:8 & 42:10-44:1, attached as Exhibit A to Arent Fox's Reply Memorandum. It is further disputed that Gordon Duval "did not represent Dare Investments or any of its principals." Despite the representation in Mr. McCloskey's self-serving affidavit in support of this statement, the documentary evidence conclusively refutes it. As set forth in the Term Sheet, Mr. Duval refers to

5

Mr. McCloskey as "my client." See Term Sheet, attached as Exhibit F to Arent Fox's Moving Memorandum.

12. Disputed. This information is within the sole knowledge of Dare. Arent Fox has not had an opportunity to investigate the truthfulness of this statement as discovery has not yet commenced in this action. Dare cites only to Mr. McCloskey's self-serving affidavit with no specific reference to documentary evidence.

13. Disputed. Once again, Dare simply relies on the impermissible affidavit of Mr. McCloskey to support this statement with no reference to any loan documents. The record conclusively establishes that Dare's loan was not secured by the BBG. The Term Sheet, the Amended Sale Order and the Amended and Restated Master Loan Agreement all make no mention of Dare receiving a security interest in the BBG. See Exhibits F and C to Arent Fox's Moving Memorandum and Exhibit 5 to the Complaint respectively. Furthermore, Dare's own attorneys were intimately involved with the drafting of the Amended Sale Order and the Amended and Restated Master Loan Agreement which confirm that Dare's loan was in no way secured by the BBG. See relevant correspondence from Dare's counsel attached to Arent Fox's Moving Memorandum as Exhibits I and M.

14. Disputed. Despite Dare's insistence that it was not an "investor", but rather just a lender, the Term Sheet specifically recites that "[o]ne of the investors in Cobra/Ventura (Mr. McCloskey) would pay on behalf of Cobra/Ventura $5,000,000…" See Exhibit F to Arent Fox's Moving Memorandum.

15. Disputed. While the Master Loan Agreement does contain language that contemplates a security interest in the BBG being granted to Dare, there is no evidence to support the conclusion that Dare was actually granted such an interest. Dare's reliance on Mr. McCloskey's affidavit in support of this statement is unavailing as Mr. McCloskey nowhere states that Dare was

ever granted a security interest in the BBG.  Furthermore, the final loan documents, as prepared by Dare's counsel, confirm that no security interest in the BBG was ever granted to Dare.  See supra at Paragraph 13.

16. Not disputed to the extent that Mr. Grossman communicated with Mr. Duval regarding the loan transaction.

17. Disputed.  The February 12, 2006 email is taken out of context and in no way supports the misplaced legal conclusion that Arent Fox had a "plan of concealment."  Furthermore, as of February 12, 2006, Arent Fox had no contractual relationship with Dare and thus owed Dare no duties whatsoever.

18. Disputed to the extent that there is nothing in the Escrow Agreement to support the statement that Mr. Grossman prepared the Escrow Agreement.

19. No separate response is necessary for this statement as it simply repeats earlier statements that have been independently addressed supra.

20. Not disputed.

21. Disputed.  This statement is a legal conclusion and not a statement of fact.  To the extent that the Court does not consider this statement a legal conclusion, it nonetheless should be rejected as no record support has been cited other than for the statement that Arent Fox received $1,440,000 in court-approved fees which is not disputed.

22. Disputed.  Dare's reliance on Mr. McCloskey's self-serving affidavit in support of this statement should be disregarded.  The record makes clear that Dare's decision to commit $5,000,000 to the transaction had nothing to do with the BBG as Dare's loan was never secured by the BBG.  See supra paragraph 13.  It is further disputed that Arent Fox had any undisclosed "self-interest" in the sale transaction.  See Arent Fox's Reply Memorandum at pp. 4-5.  The record establishes that all of the information relevant to Dare's decision to participate in the sale

transaction, including information regarding the BBG and SWJ's financial wherewithal, was either known, or should have been known, by Dare well before the sale closed. See Arent Fox's Moving Memorandum at pp. 4-10 and Arent Fox's Reply Memorandum at 2, 4-6 and the documentary evidence cited therein. McCloskey himself testified that the loan was a "huge risk" and that he had been advised by multiple sets of attorneys not to proceed with the transaction. See Exhibit A to Arent Fox's Reply Memorandum at 47:23-48:8, 69:8-69:12 & 104:23-105:25.

23. Not disputed.

24. Not disputed.

25. Not disputed that Dare retained a team of attorneys to conduct an independent investigation into the sale transaction but disputes Dare's attempt to limit the scope of such due diligence. Dare's cadre of lawyers, in actuality, conducted extensive due diligence before advising McCloskey not to proceed with the transaction. See Exhibits A & G to Arent Fox's Moving Memorandum. Among other things, Dare's due diligence revealed that a third party, the Moccos, was also making claims to the sale assets. See Id.. Further, Dare's own counsel had concluded that the BBGs were not authentic, but acknowledged that the BBG's were "not relevant" to Dare's loan and that they "just didn't matter." See Williams Transcript at 170:12-170:17, attached as Exhibit B to Arent Fox's Reply Memorandum. Dare's statement that its reliance on Arent Fox was "justifiable" is a legal conclusion and not a statement of fact. Furthermore, as set forth at length in Arent Fox's Moving and Reply Memoranda, Dare's independent due diligence precludes any showing of "justifiable" reliance thus warranting dismissal of the Complaint as a matter of law.

26. Disputed. Information regarding the problematic nature of the BBG was fully disclosed and on the record before the Bankruptcy Court well before the closing of the sale transaction. Arent Fox and counsel for the Creditors' Committee first raised concerns with the Bankruptcy Court about the collectability of the BBG by way of a joint objection to a motion to

convert filed with the Court on January 13, 2006.  See Exhibit E to Arent Fox's Moving Memorandum.  The issue was again aired before the Bankruptcy Court at a February 27, 2006 hearing.  During the course of the hearing there was extensive discussion with the Court regarding the questionable validity of the BBG.  As stated by counsel for the Creditors' Committee at the hearing, "we have questions and everyone in this courtroom knows [there] are serious questions about the collectability of those notes.  Those notes are definitely in question as to their collectability.  We're not banking on that."  Id. at p. 44.  Counsel for one of the creditors further stated at the hearing that "[w]e are informed that Arent Fox engaged Thai counsel in Thailand, obviously, to go to the Bank of Thailand to determine if these $600 million in notes were real or were they fraudulent.  And it is our understanding, admittedly hearsay, Your Honor, that they are fraudulent."  Id. at p. 48.  With this information fully available to Dare, Dare nonetheless decided to proceed with the transaction despite the advice of its own counsel.

27.     Disputed.  Information regarding a meeting that allegedly took place between McCloskey and counsel for the Moccos in 2009 is solely within the knowledge of those parties.  Discovery has not yet commenced in this action and therefore Arent Fox has not had an opportunity to investigate what occurred during the purported meeting.  Dare's reliance on the self-serving affidavit of McCloskey in support of this statement should be rejected.  The record makes clear, however, that information regarding the BBG's, SWJ's financial wherewithal, and Arent Fox's supposed "self-interest" in the transaction were fully disclosed to all in 2006.  See supra Paragraphs 22 and 26.

28.     Disputed.  This statement is a legal conclusion as to when the causes of action here allegedly accrued and not a statement of fact.  To the extent that the Court deems this a statement of fact, it is directly contradicted by the record which makes clear that all of the events underlying the claims herein took place in 2005 and 2006.  The problematic nature of the BBGs was made known

to all as early as January 13, 2006 in a public filing with the Bankruptcy Court. See supra at Paragraph 26. The issues surrounding the BBGs were fully discussed again at a hearing before the Bankruptcy Court on February 27, 2006. Id. Finally, Dare's own counsel, Kenneth Williams, Jr., testified in 2007 that he had previously concluded that the BBGs were not authentic. See Exhibit B to Arent Fox's Reply Memorandum.

29. Disputed. Dare's statement as to when it obtained information regarding Arent Fox's alleged "intentional non-disclosure" is not relevant to its cross-motion for partial summary judgment as it has not moved for judgment on its claim for "Intentional Failure to Disclose" (Count 4).

## ARGUMENT

Dare's "cross-motion" is nothing more than a repackaged recitation of the allegations in the Complaint with no support in the record. Where, as here, the Complaint fails to state a cause of action and is subject to dismissal, it goes without saying that summary judgment in favor of the plaintiff is inappropriate. Dare's unsupported proclamation that "the material facts are not in dispute" is not sufficient to warrant summary judgment. As courts in this district have held,

> …[T]he moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact. To show that no genuine issue of material fact exists, the moving party has the initial burden of production…and the burden of establishing that summary judgment is appropriate as a matter of law…[T]he moving party [ ] cannot shift the burden of production merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact. Rather, the burden of production on such an issue shifts to the nonmoving party only after the moving party has established, as a matter of law, all essential elements of the issue.

K-TEC, Inc. v. Vita-Mix Corp., 729 F.Supp. 2d 1312, 1316 (D. Utah 2010). To say that Dare has failed to shift the burden of production to Arent Fox is a vast understatement. All Dare has done is cherry pick certain facts which it proclaims are not in dispute, but does nothing to explain how those facts amount to any legally cognizable causes of action. On the other hand, Arent Fox has

conclusively shown that the Complaint is subject to dismissal as a matter of law.  Furthermore, as set forth above, the vast majority of the facts that Dare relies on in support of its cross-motion are conclusively disputed by the limited record that has been developed thus far.  Accordingly, Dare's cross-motion for partial summary judgment--to the extent it actually has made such a motion--should be denied.  In the alternative, Arent Fox requests that the Court defer considering the cross-motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure because discovery, which has not yet commenced in this action, is necessary to test various of the allegations in the Complaint as set forth above.

DATED this 12TH day of July, 2011.

          FOLEY & LARDNER, LLP

          /s/Peter N. Wang
          Peter N. Wang
          Douglas S. Heffer
          90 Park Avenue
          New York, New York 10016
          Email: pwang@foley.com
          *Pro Hac Vice Attorneys for Defendant Arent Fox*

DATED this 12TH day of July, 2011.

          KIRTON & McCONKIE, PC

          /s/Robert R. Wallace
          Robert R. Wallace
          1800 Eagle Gate Tower
          60 E. South Temple
          Salt Lake City, Utah 84111
          Email: rwallace@kmclaw.com
          *Attorneys for Defendant Arent Fox LLP*